Roxanne Lopez and Hugo LOPEZ, as guardians ad litem of L.L.; et al. Plaintiffs,

v.

The SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al., Defendants.

No. C99–03260 SI.

United States District Court, N.D. California.

Aug. 16, 2005.

Guy Wallace, Schneider & Wallace, San Francisco, CA.

Skadden Arps Slate Meagher & Flom, San Francisco, CA.

Legal Aid Society—Employment Law Center, San Francisco, CA.

Cameron Baker, City Attorney's Office, San Francisco, CA.

## ORDER AWARDING ATTORNEYS' FEES AND COSTS; AND REVIEWING TAXATION OF COSTS

ILLSTON, District Judge.

The parties have settled this disability access case, but have been unable to agree on the appropriate amount of fees and costs to be awarded to counsel for plaintiffs. This order provides that determination.

The settlement in this case represents the resolution of long, hard-fought litigation based on the Americans with Disabilities Act (ADA) and parallel state laws, focused on access for disabled students to school facilities in the San Francisco Unified School District. The settlement agreement, a Stipulated Judgment, provides substantial and important benefits for disabled students in the District. In the course of this litigation, the District itself identified over 50,000 instances in which the District's schools failed to comply with federal or state access guidelines. The Stipulated Judgment requires the District to bring the facilities in 96 schools and child development centers into compliance with ADA Accessibility Guidelines,

and establishes an enforceable timetable for compliance. The parties estimate the cost of the access work to be in excess of $100 million.

The ADA provides prevailing plaintiffs the statutory right to an award of reasonable attorneys fees and costs. Plaintiffs have requested over $8,300,000 in attorneys' fees. After carefully considering the numerous submissions provided by the parties, the Court finds that plaintiffs are entitled to $5,975,288.78 in attorneys' fees plus costs, as set out below.

## BACKGROUND

Plaintiffs in this action are persons with mobility or visual impairments, who were denied access to programs, services, facilities and activities provided by the San Francisco Unified School District ("SFUSD"). On July 6, 1999, plaintiffs filed a class action lawsuit asserting claims under the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983, alleging that physical barriers at SFUSD denied them access to the District's programs, facilities and services. Plaintiffs sought relief on behalf of student and adult users of the school properties.

On January 12, 2001, plaintiffs filed a class certification motion on behalf of student and adult classes. On May 2, 2001, this Court certified the following classes: 1) all persons disabled by mobility and/or visual impairments enrolled as students since July 6, 1996 and who have allegedly been denied their rights under the ADA, Rehabilitation Act and 42 U.S.C. § 1983 to access the programs, services, and/or facilities of SFUSD as a result of physical barriers; and 2) all persons, other than students, disabled by mobility and/or visual impairments who have allegedly been denied the rights described above. The Court certified these classes for declaratory and injunctive relief under Federal Rule of Civil Procedure 23(b)(2).

In December 2001, this Court issued an order requiring interim barrier removal while SFUSD completed a plan for providing access to disabled students. During this period, the Court stayed substantive discovery in order to allow the District to develop and implement a plan to provide access to disabled students. In March 2002, SFUSD provided to plaintiffs drafts of its ADA Transition Plan and Self Evaluation. This plan identified over 50,000 barriers or other issues related to disability access. In April 2002, the stay on discovery was lifted, and discovery on the merits commenced in earnest.

On April 20, 2004, this Court granted plaintiffs' motion for partial summary judgment regarding their claims that defendant failed to perform new construction and alterations in conformance with the ADA Accessability Guidelines. Trial on the Phase I of the balance of the claims, nature and scope of violations, was set for June 21, 2004. Six days before trial, the parties agreed on a Stipulated Judgment, establishing a series of deadlines requiring compliance with the ADA Accessability Guidelines by June 30, 2012 at the latest. The judgment also includes provision for interim work by SFUSD in schools attended by class members as well as several other requirements that provide students with access to the facilities and programs offered by SFUSD. This Court approved the settlement on October 5, 2004. However, the parties were unable to settle plaintiffs' fee claim and plaintiffs filed their motion for attorneys' fees and costs on October 15, 2004.

## LEGAL STANDARD

The authority to award attorneys' fees is derived in part from Section 505 of the ADA, which provides that "in any action or

administrative proceeding commenced pursuant to [the ADA], the court or agency, in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. Plaintiffs are entitled to fees under the ADA, the Rehabilitation Act, 29 U.S.C. § 794a(b), and 42 U.S.C. § 1988 using the "lodestar" measure of fees, which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In evaluating what is a reasonable number of hours, the Court must review detailed time records to determine whether the hours claimed by the applicant were unnecessary, duplicative or excessive. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir.1987).

There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan,* 815 F.2d at 1262. An upward adjustment of the lodestar is appropriate only in extraordinary cases, such as when the attorneys faced exceptional risks of not prevailing or not recovering any fees. *Chalmers,* 796 F.2d at 1212.

## DISCUSSION

Both parties agree that plaintiffs are entitled to an award of attorneys' fees as the prevailing party. Plaintiffs may receive an award of reasonable attorneys fees under the ADA, 42 U.S.C. § 12205, the Rehabilitation Act, 29 U.S.C. § 794a(b), and 42 U.S.C. § 1988. The parties vigorously dispute what constitutes a "reasonable" fee award.

Plaintiffs request $6,990,238.71 in attorneys' fees incurred during the lifetime of the case as well as costs totaling $1,116,166.99. Additionally, plaintiffs request that the Court apply a 1.2 multiplier to the lodestar amount for a total award of $9,000,000.[1] Defendant disputes each element of plaintiffs' fee request and requests an award of fees and costs in the amount of $3,750,000. However, even if defendant did not contest plaintiffs' motion, the Court may not accept a fee request without providing "a concise but clear explanation of its reasons for" an attorneys' fees award. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

The Court's determination of the reasonableness of plaintiffs' fee request is particularly important given that the defendant is the San Francisco Unified School District. SFUSD must pay for the majority of the fee award from its general fund, which could have a substantial impact on the general fund reserve that the District must maintain under California law. *See* Leigh Decl. at ¶¶ 2, 4. Furthermore, if SFUSD cannot maintain the necessary general fund reserve, the State of California could take control of the District.

■ SFUSD's financial constraints do not justify a denial of attorneys' fees to plaintiff. *See Aware Woman Clinic, Inc. v. City of Cocoa Beach,* 629 F.2d 1146, 1149–50 (5th Cir.1980). However, courts have taken into account the importance of determining a reasonable fee when the fees will be paid by a school district. *See McPherson v. School District # 186, Springfield, Illinois,* 465 F.Supp. 749, 756–7 (S.D.Ill.1978). In *McPherson,* the court identified a number of difficulties in determining a reasonable fee after years of litigation without any party monitoring plaintiffs' counsel. *Id.* Additionally, the

---

1. The multiplier does not apply to costs. Furthermore, when the plaintiffs' apply the requested multiplier to the lodestar, the requested award totals $9,426,405.70. Plaintiffs reach the $9,000,000 request by reducing the amount per Notice to Class. *See* Pls.' Reply, Ex. A.

court recognized that any award paid to plaintiffs' counsel "is essentially reallocating a portion of the property tax area residents pay towards furthering the educational process." *Id.* at 757. The Court also notes that the class members who are students in SFUSD will be directly impacted by any award of attorneys' fees to counsel, as it will reduce the resources that the District can use to provide an edu-cation to the class members. Keeping these factors in mind, the Court will carefully review plaintiffs' request in order to award a fee that reasonably compensates plaintiffs' attorneys.

## I. Fees requested

Plaintiffs seek fees in the following amounts: [2]

### *Skadden, Arps, Slate, Meagher & Flom*

| | | |
|---|---|---|
| Jose Allen | $675 × 1,846.50 hours | $ 1,246,387.50 |
| Scott Birkey | $310 × 88.80 hours | $ 27,528.00 |
| Benjamin Ostapuk | $435 × 80.50 hours | $ 35,017.50 |
| Carita Shanklin | $345 × 55.55 hours | $ 19,164.75 |
| Summer Associates | $160 × 55.70 hours | $ 8,912.00 |
| Legal Assistants | $110–$195 × 1,352.28 hours | $ 258,331.80 |
| Paralegals | $50 × 225.95 hours | $ 11,297.50 |
| | SUB–TOTAL: | $ 1,606,639.05 |
| | 5% Reduction: | ($ 80,331.95) |
| | TOTAL: | $ 1,526,307.10 |

### *Schneider & Wallace*

| | | |
|---|---|---|
| Todd Schneider | $435 × 26.80 hours | $ 11,658.00 |
| Guy Wallace | $435 × 3,380.60 hours | $ 1,470,561.00 |
| Clint Brayton | $350 × 61.20 hours | $ 21,420.00 |
| Sarah Colby | $350 × 256.40 hours | $ 89,740.00 |
| Jinny Kim | $350 × 165.60 hours | $ 57,960.00 |
| Josh Konecky | $385 × 29.50 hours | $ 11,357.50 |
| Elisa Laird | $225/$100 × 2,004.70 hours | $ 407,920.00 |
| Galin Luk | $350 × 149.00 hours | $ 48,425.00 |
| Wendy Musell | $325 × 2,159.50 hours | $ 701,837.50 |
| William Wilson | $200 × 15.00 hours | $ 3,000.00 |
| Law Clerks/Paralegals | $100 × 735.70 hours | $ 73,570.00 |
| | SUB–TOTAL: | $ 2,897,449.00 |
| | 5% Reduction: | ($ 144,872.45) |
| | TOTAL: | $ 2,752,576.55 |

### *The Legal Aid Society—Employment Law Center*

| | | |
|---|---|---|
| Lewis Bossing | $290 × 2,752.98 hours | $ 798,364.20 |
| Claudia Center | $395 × 223.60 hours | $ 88,322.00 |
| Sarah Colby | $350 × 59.80 hours | $ 20,930.00 |
| Mary K. Gillespie | $490 × 2,128.80 hours | $ 1,043,112.00 |
| Jinny Kim | $325/$100 × 82.88 hours | $ 8,599.00 |

**2.** In their request for fees, plaintiffs reduced their total billable hours by 5 percent based on "billing judgment."

| | | | |
|---|---|---|---|
| Elizabeth Kristen | $250 × 47.27 hours | $ | 7,090.50 |
| William C. McNeill, III | $490 × 13.37 hours | $ | 6,551.30 |
| Patricia Shiu | $460 × 795.82 hours | $ | 366,077.20 |
| Guy Wallace | $435 × 213.80 hours | $ | 93,003.00[3] |
| Diane Webb | $225 × 122.63 hours | $ | 27,591.75 |
| Law Clerks | $100 × 1,025.87 hours | $ | 102,587.00 |
| Paralegals | $150 × 1,359.70 hours | $ | 03,955.00 |
| | SUB–TOTAL: | $2,766,182.95 | |
| | 5% Reduction: | ($ 138,309.14) | |
| | TOTAL: | $2,627,873.81 | |

*Law Offices of Richard M. Pearl*

| | | | |
|---|---|---|---|
| Richard Pearl | $475 × 185.00 hours | $ | 87,875.00 |
| | 5% Reduction: | ($ | 4,393.75) |
| | TOTAL: | $ | 83,481.25 |

## A. Skadden, Arps

### 1. Jose Allen

Jose Allen has been a partner in the San Francisco office of Skadden, Arps since 1990; his practice emphasis is environmental litigation. Allen Decl. at ¶ 7. He graduated from Boston College Law School in 1976. *Id.* at ¶ 3. Aside from this case, Allen has litigated one disability case *Putnam v. Oakland Unified School District*, Civil Action No. 93–3772 CW (N.D.Cal.). However, Allen also has extensive experience in areas of law such as securities law, products liability, and commercial disputes. *Id.* at ¶ 7.

Allen asserts that his regular hourly rate for firm clients is $675 and that this rate reflects the market rate for attorneys of similar experience, expertise, and reputation. *Id.* at ¶ 24. Defendant argues that his hourly rate should be reduced because the subject matter of this case falls outside of his area of expertise, as he has only litigated one other disability case. Defendant also asserts that Allen's hourly rate should be reduced because his firm accept-

ed this case on a pro bono basis, and that the firm receives intangible benefits from this case that it would not receive from fee-paying clients.

■ In order to determine the proper rate, courts must "[refer] to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545 (9th Cir.1992). Additionally, courts must consider the ability of counsel, the amount involved, customary charges for similar services, and the results obtained to determine a reasonable fee. *Oberfelder v. City of Petaluma*, 2002 WL 472308 *4 (N.D.Cal.2002).

■ This Court has carefully considered the history of this case in order to determine the reasonable fee. The case involved long-standing violations of disability access by SFUSD. The District's liability was not in question, given the District's continuing failure to remove access barriers and the detailed description of that

---

**3.** Mr. Wallace was a lawyer with the Legal Aid Society—Employment Law Center until June, 2000; thereafter, he was a partner at Scimeider & Wallace.

failure in the District's 2002 report. The strength of plaintiffs' case is demonstrated by its ability to prevail on their summary judgment motion. Although the factual scope of the case was great, and was complicated by SFUSD's recalcitrance, the case was not legally complex in that plaintiffs were not forced to develop novel legal issues. Although the result obtained is highly beneficial to the class members, it is a result that could have been obtained by lawyers with a broad range of experience. Therefore, Allen's customary hourly rate as a partner for a global law firm with nearly 30 years of experience on behalf of corporate clients in complicated environmental and securities litigation is not the reasonable market for this case.

Plaintiffs assert that Allen's market rate should be found reasonable under *Oberfelder* and *Common Cause v. Jones*, 235 F.Supp.2d 1076 (C.D.Cal.2002). In *Common Cause*, the court found that the law firm of Munger, Tolles & Olson was entitled to an award of their typical hourly rates because of the "complexity, urgency and novelty" of the case, which involved a challenge against the use of punch-card voting systems. *Id.* at 1081. Specifically, the court found that "the legal issues were complex, multivariate and often novel, including constitutional and statutory challenges to an intricate election scheme, and, later, the practicability of a rapid overhaul of the state's electoral machinery." *Id.* As discussed above, plaintiffs' case in this action did not involve such issues and does not warrant Allen's customary hourly fees.

In *Oberfelder*, the court found that counsel was entitled to its customary hourly rate in a criminal defendant's claim of excessive force under 42 U.S.C. § 1983, despite the attorney's lack of experience in civil rights litigation. 2002 WL at 472308 *5. However, in support of this award, the court specifically noted that "this was not an easy case" and that counsel "did not

have a sympathetic plaintiff." *Id.* at 2002 WL 472308 *4. The court also referred to counsel's "vigorous efforts," which resulted in an award in excess of plaintiff's medical costs. *Id.* In this case, the class members were highly sympathetic, liability was not in question, and plaintiffs did not recover individual damages. Therefore, the Court finds that this case, and Allen's role in it, are not similar to counsel's in *Oberfelder*.

Allen's skills as an attorney are not in question, and his specialized skills in the specific fields of his expertise, including environmental and complex securities litigation, are unchallenged. However, the reasonable rate to be used in this case must be based on the needs of this case, in this context. Here, the Court finds that based on the nature of the case and the results obtained, a reasonable fee must be determined starting first with the market rate for highly qualified civil rights attorneys. The Court finds that $495 is the market rate for an attorney with 30 years experience in civil rights litigation. This rate is based upon the declaration of Barbara Lawless, who is a partner in a civil rights firm specializing in wrongful termination. Lawless Decl. at ¶ 1. Her hourly rate is $495. *Id.* at ¶ 9. Lawless has practiced law since 1973, and has been lead counsel in more than 22 jury trials. *Id.* at ¶ 3. Lawless has superb qualifications and has been appointed a pro tem judge in San Francisco and Santa Clara counties. *Id.* at ¶¶ 6-8. Given that Allen has limited experience in civil rights litigation, while Lawless focuses specifically on civil rights litigation, Allen's rate must be lower than Lawless' rate. Later in this order, the Court finds that proper hourly rate for Patricia Shiu, who has over 20 years of experience in civil rights litigation, is $460 per hour. The Court finds that this same rate is appropriate for Allen given the nature of this case, his experience and his role in the case.

### 2. Associates

■ Plaintiffs also request hourly rates for three Skadden, Arps associates who worked on the case. Plaintiffs request the following hourly rates: 1) $160 for summer associates; 2) $310 for second-year associate Scott Birkey; 3) $345 for third-year associate Carlta Shanklin; and 4) $435 for seventh-year associate Benjamin Ostapuk.

As discussed above, the Court finds that a reasonable award should not be based on Skadden Arps' market rates. Instead, the Court will award plaintiffs' the market rates for highly qualified civil rights attorneys. As discussed below in detail, the Court finds that the rates asserted by Schneider & Wallace are appropriate market rates. *See* Wallace Decl. at ¶¶ 174–181 (providing hourly rates for law clerks, second year associate Elisa Laird, and seventh year associate Clint Brayton). Although the Wallace declaration does not provide an hourly rate for third year associates, the Court will calculate the proper amount by adding $35 to the hourly rate provided for second year associates, to account for the same differential found in Skadden's rates.

Therefore, the Court awards the following hourly rates: 1) $100 for summer associates; 2) $225 for second year associate Scott Birkey; 3) $260 for third year associate Carita Shanklin; and 4) $350 for seventh year associate Benjamin Ostapuk.

### 3. Legal assistants/paralegals

Plaintiffs also request $110–$195 hourly rates for legal assistant's and $50 hourly rate for paralegals. Although plaintiffs have submitted hundreds of pages of documentation and numerous declarations in support of this motion, plaintiffs fail to present any evidence explaining the marked difference between the $110 hourly rate of legal assistant Bussarakum and the $195 hourly rate of legal assistant Zygarewicz.[4] *See* Allen Decl., Ex. A. The only reference to any qualifications for the legal assistants can be found in Appendix A to plaintiffs' reply motion, which has an entry of "1998" in the column denoting year of law school graduation. It is unclear to the Court what this entry signifies. Furthermore, plaintiffs' fee counsel presents a list of current hourly rates for numerous firms in his declaration, and only one firm has an hourly rate for paralegals or legal assistants that matches Zygarewicz's rate. *See* Pearl Decl. at ¶ 9.

This information is not sufficient for the Court to conduct a careful examination of plaintiffs' fee request. The Court has no basis for determining whether Zygarewicz has sufficient qualifications to warrant such a high hourly rate. In examining the plaintiffs' billing records, all three legal assistants at Skadden, Arps performed similar tasks, predominantly developing and maintaining the database created for the litigation. *See* Allen Decl., Ex. B. Therefore, plaintiffs have not met their burden by submitting sufficient evidence that these rates are comparable to current market rates. *See United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990). Based on plaintiffs' submissions, the Court finds that $110 is the reasonable hourly rate for all three Skadden, Arps legal assistants.

Plaintiffs have presented sufficient evidence in the Pearl declaration to support the $50 hourly rate for paralegals, and the Court will award fees based on that hourly rate.

### B. Schneider & Wallace

### 1. Guy Wallace

■ Guy Wallace served as lead counsel for the case. He graduated from Harvard

---

**4.** The Court was unable to locate the first names of the Skadden legal assistants.

Law School in 1993, and has been a partner at Schneider & Wallace since 2000. Wallace Decl. at ¶ 2. From 1998 to 2000, he was a staff attorney at the Legal Aid Society of San Francisco/Employment Center, and served as head of the disability rights practice at ELC. *Id.* He has served as class counsel in at least eleven civil rights actions, specializing in disability civil rights actions and employment discrimination cases. *Id.* at ¶ 3. Plaintiffs have presented evidence that Wallace is recognized as a leading litigator in disability access cases. *See* Odgers Decl. at ¶ 10; Paradis Decl. at ¶¶ 11, 12. Plaintiffs also presented testimony that his $435 hourly rate is within the range of other attorneys with similar experience and skill. Pearl Decl. at ¶¶ 9–14.

Defendant argues that the proper rate for Wallace is $300–$350 an hour. *See* Schratz Decl. at ¶ 32. Defendant argues that this rate was calculated based on comparably-sized firms. However, the survey relied upon by Schratz considers only the number of attorneys in the firm and does not take into account the type of work performed by the firm. Schratz Decl., Ex. 14. Additionally, the survey only deals with a small number of firms, which can skew the results. In the *Davis* case, the Ninth Circuit specifically rejected the approach taken by Schratz, requiring instead that the court consider the market rates for legal work of similar complexity. *Davis,* 976 F.2d at 1545. Thus defendant effectively presents no evidence in support of its assertion that Wallace's rate is inappropriate and the Court accepts Wallace's market rate of $435 an hour.

### 2. Other attorneys

Plaintiffs present substantial evidence that the rates asserted by the remaining attorneys at Schneider & Wallace are also appropriate. *See* Pearl Decl.; Lawless Decl. at ¶ 10; Sturdevant Decl. at ¶ 9; Paradis Decl. at ¶ 11. As discussed above,

defendant presents no valid evidence in support of its request for lower hourly rates. The Court has reviewed the hourly rates for the attorneys at Schneider & Wallace and finds them appropriate for this case.

### C. Legal Aid Society–Employment Law Center (ELC)

### 1. Patricia Shiu

 Patricia Shiu, Jose Allen and Guy Wallace were the three lawyers responsible for oversight of the litigation. Shiu Reply Decl. at ¶ 28. Shiu, a 1982 graduate of the University of San Francisco School of Law, is the Vice President of Programs at the ELC. Shiu Decl. at ¶¶ 3, 7. She has experience as lead counsel or co-counsel on at least 10 employment or civil rights cases. *Id.* at ¶ 8. Shiu also has been involved in two ADA cases involving educational institutions. *Id.* at ¶ 9. Shiu asserts that her market rate is $460 an hour. Plaintiffs present evidence that Shiu is a well-respected civil rights litigator. Weiss Decl. at ¶ 5; Odgers Decl. at ¶ 7. Plaintiffs also present evidence that attorney rates at ELC are established by ELC's Board of Directors, which is comprised of attorneys in San Francisco. The rates are set by collecting information from San Francisco firms performing comparable work. Odgers Decl. at ¶ 5. Defendant presents no evidence in support of a lower hourly rate. The Court has reviewed Shiu's hourly rate and finds that it is appropriate for complex federal litigation in this market. Therefore, the Court will award fees for Shiu at the rate of $460 an hour.

### 2. Mary K. Gillespie

 Mary Gillespie, a graduate of Harvard Law School in 1970, coordinated ELC's participation in discovery in the case. Shiu Decl. at ¶ 28; Shiu Reply Decl. at ¶ 13. Gillespie was Regional Counsel

for California Rural Legal Assistance (CLRA) from 1979–1990 and the Director of Litigation, Advocacy and Training from 1996–1999. Shiu Reply Decl. at ¶ 13. Plaintiffs request an hourly rate of $490 based on her experience in civil rights litigation and the current market. Odgers Decl. at ¶ 8.

Gillesple's experience is extensive and valuable. However, in the context of this case, her role was to "coordinate[ ] the LAS–ELC's participation in discovery for this case, which included, in addition to drafting written discovery, deposing witnesses, and analyzing discovery responses, filing at least seven motions to compel...." Shiu Decl. at ¶ 28. Gillespie also supervised "junior attorneys, paralegals, and law students in preparation for the trial." Shiu Decl. at ¶ 30. Gillespie spent over two thousand hours performing these tasks. Under these circumstances, it is appropriate to compensate her time on this work at the hourly rates payable to talented journeyman litigation attorneys. *See Finkelstein v. Bergna,* 804 F.Supp. 1235, 1238 (N.D.Cal.1992) (reducing attorney's rate when some tasks could have been performed by less experienced attorney).

The Court finds that the proper hourly rate for Gillespie is $350, the hourly rate for an attorney with seven years of experience in disability litigation.

### 3. Remaining attorneys

As discussed above, plaintiff has presented substantial evidence that the rates of the remaining attorneys represent fair market rates for complex federal litigation. *See generally* Shiu Decl.; Odgers Decl.; and Weiss Decl. The Court finds that the remaining attorneys have fair market rates, and will award fees based on the rates requested.

### 4. Paralegals

Plaintiffs request an hourly rate of $150 for paralegals at ELC. This is $50 higher than the hourly rate requested by Schneider & Wallace, $100 higher than the hourly rate requested by Skadden, Arps for paralegals, and $40 higher than the hourly rate for legal assistants awarded to Skadden, Arps. Plaintiffs present no evidence to explain why paralegals at ELC are entitled to significantly higher rates, and the Court finds that they are not. Therefore, ELC may recover fees for paralegals at an hourly rate of $100.

### D. Richard Pearl

The Court will not address whether Richard Pearl's hourly rate is appropriate. As discussed below, the Court finds that Pearl's hours are not compensable because they are excessive and duplicative.

## II. Hours reasonably expended

Plaintiffs assert that they spent more than 20,000 hours in reasonable preparation of this litigation. In support of their argument, plaintiffs have presented massive amounts of documentation, including declarations, billing records, and other documents. Plaintiffs have produced billing records that provide information recorded on a daily basis for each attorney involved in the case. *See* Wallace Decl., Ex. XXX; Shiu Decl., Ex. B; Allen Decl., Ex. B. Plaintiffs assert that they have eliminated more than 2,000 hours of recorded time and taken a 5% reduction to account for any incorrect billing.

### A. Schratz declaration

■ Defendant presents the expert declaration of James P. Schratz in support of its opposition to plaintiffs' motion. Schratz is an attorney who owns a litigation management and consulting firm and was retained by defendant to audit plain-

tiffs' fee request. He has been licensed to practice law in the State of California since 1976. After working for two firms between 1976 and 1980, Schratz joined the General Counsel's Office of Fireman's Insurance Company. Since 1984, Schratz worked in the Major Litigation Unit of the Claims Department. Ten years later, he left Fireman's Insurance to start his own firm and began conducting legal fee audits.

Plaintiffs move to strike the Schratz declaration because it does not comply with Federal Rule of Evidence 702. Specifically, plaintiffs challenge Schratz's experience and methodology. As discussed above, the Court has already found that Schratz's argument with respect to hourly rates lacks legal and factual support. Additionally, Schratz has no experience in class action or disability litigation. Schratz also fails to present the time entries to support his assertions. For example, he claims that 2,229.03 hours were spent in "conferencing." Schratz Decl. at ¶ 38. However, Schratz does not provide the entries that he has determined constitute "conferencing". Finally, Schratz asserts that a 20 percent reduction in plaintiffs' fees is proper because of excess billing caused by "nearly complete leadership and management failures." *Id.* at 60. Yet again, Schratz fails to explain how he determined 20 percent to be the proper reduction or why this reduction was necessary in light of the numerous other reductions he suggests. Schratz does not provide any examples of actual time entries that should fall under the 20 percent reduction.

The Court will not strike the Schratz declaration in its entirety; however, it will consider the declaration only when it is accompanied by specific factual support.

## B. Billing units

▮ Defendant challenges the entries submitted by Skadden, Arps because many of them fall under 0.25 hour increments, as opposed to 0.10 increments. The Court has reviewed the billing records and finds that both Allen and Shanklin predominantly submitted entries in 0.25 increments. For example, every entry submitted by Allen from April 1999 to March 2003, comprising over 13 pages of records, consisted of 0.25 increments. *See* Allen Decl., Ex. B at 1–14. Additionally, every entry by Ostapuk was in 0.25 increments. *See id.* at 25–28.

Courts have recognized that billing "by the quarter-hour, not by the tenth" is a "deficient" practice "because it does not reasonably reflect the number of hours actually worked." *See Zucker v. Occidental Petroleum Corp.,* 968 F.Supp. 1396, 1403 (C.D.Cal.1997) (demonstrating that attorney with $300 hourly rate who works 6 minutes on a matter would charge $30 if he bills by the tenth of an hour and $75 if he bills by the quarter hour). Because of this, courts have reduced the fee award by a percentage to account for the unearned increment based on quarter-hour billing. *See Preseault v. United States,* 52 Fed.Cl. 667, 680–81 (Fed.Cl.2002) (citing cases). Therefore, the Court will reduce the attorneys' fee award for Allen, Shanklin, and Ostapuk by ten percent to account for the practice of billing by the quarter-hour.[5]

## C. Alleged inefficiencies

Defendant claims that plaintiffs' counsel engaged in duplicative billing caused by many structural inefficiencies. Defendant asserts that multiple attorneys appeared on behalf of plaintiffs at depositions and court hearings. *See* Schratz Decl. at 35–

---

**5.** Therefore, plaintiffs' award will be reduced as follows: $84,939 for Allen; $1,444.30 for Shanklin; and $2,817.50 for Ostapuk. The total reduction is $89,200.80.

38. The Court has reviewed the instances cited by defendant and does not find it unreasonable to have multiple attorneys present at a case management conference, mediation, or deposition. Defendant is particularly critical of the fact that seven attorneys attended the September 5, 2003 motion hearing to decertify the class and five attorneys attended the pre-trial conference on May 18, 2004. Given the size and complexity of the case, it was not unreasonable to have a number of attorneys at these important proceedings.

Defendant also criticizes the amount of time billed to "conferencing" as excessive. Defendant claims that over 2200 attorney hours were spent "conferencing." However, defendant offers no evidence to support its claim, as it does not identify the entries that it has determined fall under the category of "conferencing." The Court will not make reductions based on unsupported assertions.

For similar reasons, the Court also denies defendant's request to reduce the plaintiffs' fee award by 20 percent for "fundamental, underlying management problems." Schratz Decl. at ¶ 60. As discussed in section II(A), defendant provides no evidence in support of its assertion.

### D. Litigation strategy

Defendant argues that plaintiffs' counsel engaged in "unnecessary, redundant or excessive litigation" that warrants a substantial reduction in their fee award. The Court will address each of the alleged inefficiencies in turn.

### 1. Plaintiffs' preliminary injunction motion

Defendant argues that plaintiffs' preliminary injunction motion was unnecessary because plaintiffs knew that the Court was going to issue an interim removal order before defendant presented its ADA Transition Plan. Defendant requests that the Court deny all fees associated with the motion. Plaintiffs argue that the time spent on the preliminary injunction motion filed on December 12, 2001 was reasonable and related to their successful claims.

The Court finds that plaintiffs are entitled to compensation for time spent on their motion for preliminary injunction. The motion was filed one day after the Court issued its Order granting interim relief. See Wallace Decl., Ex. MM. Plaintiffs have presented evidence that they had not received the Order in the mail at the time they filed the motion for a preliminary injunction. See Wallace Reply Decl. at ¶ 119. The motion involved schools not addressed in the Court's December 11, 2001 Order and plaintiffs' counsel has stated that it utilized the legal arguments and evidence prepared for the motion on other matters in this case. See Webb v. Sloan, 330 F.3d 1158, 1169 (9th Cir.2003). The motion brought by counsel was part of a successful litigation strategy and was not frivolous. Therefore, the Court finds that plaintiffs are entitled to compensation for counsel's work on the motion for preliminary injunction.

### 2. Summary judgment and bifurcation motions

Defendant argues that plaintiffs spent excessive time on their motions for partial summary judgment and bifurcation. Defendant claims that plaintiffs "abandoned at oral argument" the relief class counsel sought in their partial summary judgment motion. Defendant asserts that plaintiffs then requested this relief again in a motion for injunctive relief just before trial. Defendant claims that the time spent on these motions was excessive and that the Court should deny compensation.

However, defendant relies solely on vague assertions in support of its argument. Defendant does not identify what

aspects of plaintiffs' motions were excessive or what arguments plaintiffs abandoned. In fact, plaintiffs prevailed on both motions. *See* Wallace Decl., Ex. RR. In the Order granting plaintiffs' motions, the Court found that it had "no trouble concluding that the SFUSD has violated numerous sections of the ADAAG." *Id.* at 8. The Court also found that defendant failed to address more than 369 allegations of noncompliance with the ADA raised by plaintiffs, which exposes the weakness of defendant's argument that plaintiffs' time spent on the motion was excessive in comparison to the 175 spent in preparation for defense counsel. *Id.* at 7. The Court finds that plaintiffs are entitled to compensation for counsel's work on both motions.

### 3. Discovery and depositions

Defendant argues that the Court should reduce plaintiffs' fee award because plaintiffs: 1) conducted too many depositions; 2) reviewed and copied too many documents; and 3) prepared excessive analysis on each class member's IEP. Defendant asserts that a fee-paying client would request a more focused approach to the litigation.

The Court finds that counsel's conduct in discovery and depositions was reasonable. Defendant does not identify which depositions or documents were excessive; therefore, it leaves the Court to guess. This is not sufficient in light of plaintiffs' provision of detailed time sheets in support of their motion. The Court has already rejected defendant's argument that the Rule 30(b)(6) depositions were unnecessary because the same information could be obtained from architectural drawings, finding in its March 9, 2004 Order that they were necessary to obtain "binding answers" from defendant. Wallace Decl.,

Ex. WW at 5. The Order also found that defendant "repeatedly delayed" the Rule 30(b)(6) deposition, which explains plaintiffs' need to bring a motion to compel. *Id.* at 6. Although the original deposition notice was overbroad, it was easily cured by limitations imposed by the Court. The same cannot be said for defendant's tactics during discovery.

The Court also finds that plaintiffs' document review was appropriate, as defendant presents no explanation for why the construction histories of the schools would not be relevant to the case at trial. The Court finds that plaintiffs' IEP analysis was reasonable considering that Judge Chen upheld plaintiffs' request for those documents in his May 14, 2003 Order. *See* Wallace Decl., Ex. VV. Additionally, plaintiffs have presented evidence that the IEP documentation was relevant to prepare for defendant's assertion that it provided sufficient access through the IEP process. Shiu Reply Decl. at ¶ 37. The Court finds this persuasive and will award fees for all time related to discovery and depositions.

### 4. Experts

Defendant argues that the Court should disallow attorney time spent in connection with Ian Bailey, Linda Fidell, Paul Guillory, Benjamin Mandac, Wayne Sailor, Edward Steinfeld and Winston White Because "these experts would serve no useful purpose at trial." Opp'n at 19. The Court finds that these experts were appropriate, as it did when it denied defendant's motion in limine before trial on May 18, 2004.[6]

Defendant also asserts that plaintiffs' three access experts were duplicative and excessive, and requests that the Court reduce by half attorney time spent with the access experts. Again, defendant provides

**6.** At that time, defendant brought the motion against witnesses Guillory, Sailor, Bailey and Mandac.

no description of how the work performed by the three experts was excessive. Plaintiffs have provided a detailed explanation for the independent work performed by each expert. *See* Wallace Decl. at ¶ 146; Wallace Reply Decl. at ¶¶ 139–142. Therefore, the Court will award attorneys' fees for work performed with the three access experts.

### 5. Final pretrial submissions

Defendant argues that the Court should reduce plaintiffs' recovery for attorney time spent on final pretrial preparation by 75% for being excessive and disorganized. Defendant asserts that the case was headed to trial "only because the parties were unable to settle" [7] and that plaintiffs should have agreed to continue the trial date so the parties could reach an agreement without additional fees.

The Court finds that plaintiffs are entitled to recover fees spent in preparation for trial. Plaintiffs were justified in refusing to continue the trial, given that the case was five years old and that the Court had provided for a fixed and definite trial date. The Court would have been unlikely to grant a continuance of trial, even if stipulated, given the history of the case to that point. Additionally, defendant had a long-standing history of delay and failure to comply with disability laws, which supports plaintiffs' extensive preparation for trial. If plaintiffs' counsel had failed to adequately prepare for trial, it would have been a disservice to their clients. The Court finds that plaintiffs are entitled to compensation for all attorney time spent in preparation for trial.

### 6. Scope of case and results obtained

█ Defendant argues that the Court should reduce plaintiffs' recovery for attor-

neys fees because the Stipulated Judgment is not a substantial improvement to the District's ADA Transition Plan and Self–Evaluation and because plaintiffs abandoned their claim for damages. The Court rejects this argument and finds that a reduction in fees is not appropriate. Defendant ignores the important difference between the Stipulated Judgment and the ADA Transition Plan: the Stipulated Judgment may be enforced by the court. Defendant had a decades-long history of ADA violations, making it reasonable to anticipate that the District's creation of a "plan" might not sufficiently address plaintiffs' needs. By obtaining a court-enforceable judgment, plaintiffs can assure students' access to the District's facilities. Defendant's argument that "no paying client" would pay to obtain the Stipulated Judgment, in comparison to the District's ADA Transition Plan, defies logic given the District's failure to provide disability access for decades. It is unreasonable for defendant to argue that the benefit is merely "marginal." Plaintiffs received over $100 million worth of relief from this action; therefore, the Court finds that counsel is entitled to recover for time spent in obtaining this beneficial result.

### E. Plaintiffs' settlement position

Defendant claims that plaintiffs' fee award should be reduced because counsel "staked out extraordinary settlement demands from the outset." Specifically, defendant criticizes plaintiffs' position that it would not enter into negotiations until defendant agreed to a settlement involving a consent decree with a special master. It was reasonable for plaintiffs to seek a remedy that was enforceable, given defendant's failure to comply with the ADA for

---

**7.** This argument has no merit. Every case heads to trial because the parties are unable

to reach a settlement.

more than 20 years. The Court finds that plaintiffs did not "concede" on this issue in a manner that warrants a reduction in the award, because the settlement obtained includes a Stipulated Judgment that can be supervised by the court. This remedy provides plaintiffs with the oversight they requested from the beginning of the litigation.

### F. Richard Pearl

Richard Pearl served as fee counsel for plaintiffs. Plaintiffs seek an award of $83,481.25 for time spent in preparation of the motion for attorneys fees and costs. *See* Pls.' Reply, Ex. A. Plaintiffs assert that Pearl's services were required because of the large award at stake and his expertise in the field. Pearl is a 1969 graduate of Boalt Hall School of Law and his practice focuses predominantly on court-awarded attorney's fees. Pearl Decl. at ¶¶ 2, 4.

Defendant contends that plaintiffs should not be reimbursed for Pearl's work because his services were an "overreaction," as found in *Marbled Murrelet v. Pacific Lumber*, 163 F.R.D. 308, 326 (N.D.Cal.1995). In *Marbled Murrelet*, the court found that Pearl's time was not compensable because the plaintiffs' attorneys were capable of providing arguments for the fees motion. *Id.* The court also acknowledged that counsel had already litigated fee-shifting causes of action cases and the only question pending before the court was determining the reasonable fee award. *Id.* Plaintiffs assert that *Marbled Murrelet* does not apply because Pearl served only as a consultant in that case, while he was an attorney of record in this case.

*Davis*, which plaintiffs rely upon, upheld an award of fees for work performed by fee counsel because the work was not duplicative. *Davis*, 976 F.2d at 1544. However, the Court finds that Pearl's work in this case was unnecessary and duplicative. Plaintiffs' counsel are highly experienced in civil rights litigation, which justifies their high hourly rate, and have previously dealt with fees motions. *See Guckenberger v. Boston University*, 8 F.Supp.2d 91, 95 (D.Mass.1998). Furthermore, the massive amounts of time spent by counsel on this motion demonstrates that the additional effort of Pearl was not necessary.

The work performed by Schneider & Wallace alone makes Pearl's requested award duplicative. Wallace submitted a 70 page declaration in support of plaintiffs' motion for attorneys' fees and submitted a 67 page declaration in support of plaintiffs' reply. The arguments raised by Wallace in the declarations largely correspond to the briefs submitted by plaintiffs. In reviewing the billing records, the Court finds that Schneider & Wallace request compensation for over 100 hours of attorney time spent in support of the reply brief and supporting documents, which occurred after plaintiffs' motion was filed on October 15, 2004. *See* Wallace Reply Decl., Ex. FF. This amount does not include the hours spent in preparation of the original motion by Schneider & Wallace. This amount also does not include the hours spent by the ELC and Skadden, Arps in support of the motion for attorney's fees.

Additionally, plaintiffs submitted a total of 21 declarations in support of their request, which included several declarations from third party lawyers. *See* Paradis Decl., Seligman Decl., Sturdevant Decl., Lawless Decl. Plaintiffs also included multiple declarations from Jose Allen and Patricia Shiu, the other two members of plaintiffs' "Executive Committee," that reiterated many of the arguments included in the Wallace Declarations and the briefs.

Given the hundreds of hours spent and thousands of pages of documents produced by plaintiffs' counsel, the work performed

by Pearl was duplicative. As in *Marbled Murrelet*, the only issue currently before the Court is the amount that constitutes a reasonable award. In a 25 page motion for attorneys' fees, plaintiffs dedicated 16 pages to the background of the case, something that Wallace, Shiu and Allen were far more qualified to produce than Pearl. Plaintiffs assert that if Pearl had not been retained as fee counsel, then counsel would have billed additional hours to compensate. However, the Court finds that any additional time spent by counsel on this motion would be wasteful and unnecessary, given the hundreds of hours spent and the lack of complexity to the legal issues in this case. Therefore, the Court finds that plaintiffs are not entitled to an award for the work of Richard Pearl.

### III. Lodestar multiplier

█ Plaintiffs request that the Court award counsel a multiplier of 1.2 in addition to the lodestar amount discussed above. Plaintiffs may recover an amount greater than the lodestar figure where the "applicant has met the burden of showing that such adjustment is necessary to the determination of a reasonable fee." *Guam Soc'y of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir.1996). An increase in the lodestar is appropriate only in "limited circumstances." *Oberfelder v. City of Petaluma*, 2002 WL 472308, *10 (N.D.Cal.2002).

█ Plaintiffs argue that an increase in the lodestar amount is necessary to provide a reasonable fee for the following reasons: 1) the exceptional results achieved; 2) the undesirability of the case; 3) the exceptional complexity and difficulty of the case; and 4) the preclusion of other employment for counsel. Defendant asserts that no exceptional circumstances are present in this case, and that the Court should not award a multiplier to plaintiffs.

Plaintiffs argue that an enhancement to the lodestar is necessary based on the exceptional results achieved. Plaintiffs assert that the Stipulated Judgment "requires defendants to make one hundred schools fully accessible to children with mobility and/or vision disabilities, at a cost of $100 million." Pls.' Mot. at 24. The Court recognizes that plaintiffs obtained a settlement that will provide essential access to education for children with disabilities. Additionally, the Court recognizes the importance of providing access to the disabled. However, the Court finds that plaintiffs have not overcome the "heavy burden" of the presumption that the lodestar amount is reasonable. *See Marbled Murrelet v. Pacific Lumber Company*, 163 F.R.D. 308, 320 (N.D.Cal.1995). Plaintiff claims that an enhancement is warranted based upon the 1.33 enhancement upheld in *Hyatt v. Apfel*, 195 F.3d 188 (4th Cir. 1999). In *Hyatt*, plaintiff filed suit to require the Secretary of Health and Social Services to follow circuit precedent in Social Security cases. *Id.* at 189. The court upheld the district court's finding of "exceptional" circumstances in this "extensive and procedurally tortured" class action, which involved four published circuit court opinions, a finding of bad faith against the government for refusing to comply with court decisions and the uncovering of a "secret, unlawful policy." *Id.* at 190–92. The current case, although highly beneficial to plaintiffs, is not "rare" or "exceptional" along the lines of *Hyatt*.

The Court finds that plaintiffs' counsel obtained a settlement that is similar to the result that would be obtained by other highly compensated attorneys in complex federal litigation. Plaintiffs have already justified their hourly rates based upon the demands of the case. In order to justify an enhancement, plaintiffs must demonstrate that the settlement is "exceptional" in comparison to other similar cases.

Plaintiffs have acknowledged that the defendant's violations were long-term, systematic and well-known. Therefore, the Court finds that the settlement, although important, was not exceptional in comparison to the result that could have been achieved by lawyers of similar experience and ability.

The Court also recognizes that plaintiffs were forced to overcome substantial obstacles presented by defendant in order to achieve a settlement in this case. However, plaintiffs also contributed to the difficulty of the litigation to some extent. Although the defendant's resistance justifies plaintiffs' large billable hour request, it does not warrant a finding that the result was "exceptional."

Plaintiffs rely upon *Guam Soc'y* and *Oberfelder* in support of their argument that an enhancement is warranted based on the undesirability of the case. However, this case differs greatly from those relied upon by plaintiffs. In *Guam Soc'y,* counsel represented plaintiffs in their successful challenge of Guam's anti-abortion statute. *Guam Soc'y,* 100 F.3d at 694. The district court found that an enhancement was necessary because of the "extreme undesirability of the case" given "the likelihood that no other attorney on the island would have accepted the case." *Id.* at 697. Counsel received death threats and encountered overt hostility from the community. *Id.* at 698–99.

In *Oberfelder,* counsel was appointed by the court to represent plaintiff in his section 1983 action against the sheriff's department for excessive force during arrest. *Oberfelder,* 2002 WL 472308, at *1. The court found that "several factors" rendered the case undesirable: counsel represented an "unsympathetic plaintiff" with multiple drug convictions; plaintiff was incarcerated throughout the proceedings; and counsel was required to "challenge the actions and judgment of a law enforcement official

and defend the constitutional rights of a convicted drug dealer." *Id.* at 2002 WL 472308, at *11.

Plaintiffs in this case consisted of disabled children and adults denied access to educational and other civic activities because of defendant's long-standing violations. Plaintiffs are among the most worthy clients an attorney could represent. The Court does not find that plaintiffs are "unsympathetic" or that counsel would be subject to hostility from the community in this case, as in *Guam Soc'y* and *Oberfelder.* Therefore, the Court will not enhance the lodestar amount based on the undesirability of the case.

The Court finds that an increase in the lodestar based upon the complexity of the case is not appropriate, as this factor was already considered in determining the appropriate lodestar amount, Plaintiffs justified their hourly fees by asserting that they were comparable to fees charged by lawyers for "complex federal litigation." Pls.' Reply at 7. Given that plaintiffs have already argued that the complexity of the case warrants a higher market rate, plaintiffs may not raise that argument again for purposes of enhancing the lodestar. Additionally, plaintiffs relied upon the complexity of the case to justify the tens of thousands of billable hours claimed in the lodestar amount. Plaintiffs rely upon *Daggitt v. United Food and Commercial Workers Int'l,* 245 F.3d 981, 990 (8th Cir. 2001), in support of their argument that the complexity of the case warrants an enhancement. However, the court in *Daggitt* specifically referred to the "modest nature of the lodestar figure" in justifying an enhancement. *Id.* No modest lodestar figure exists in this case.

Finally, the Court finds that an enhancement is not warranted based on the preclusion of other employment. Plaintiffs' counsel has already been compensated for

its time based on the hourly rates claimed in the lodestar determination. Plaintiffs present no evidence that they were precluded from more profitable work. *See* Wallace Decl., at ¶ 198; Shiu Decl. at ¶ 19; Allen Decl. at ¶ 52. In fact, plaintiffs' refer to the fact that they "were diverted from cases that would have produced significant compensation on a shorter time frame." Wallace Decl. at ¶ 198. The Court will not enhance the lodestar amount based upon this argument, which appears to be an attempt at a multiplier for taking the case on contingency. Federal fee shifting statutes prohibit contingency enhancements *Burlington v. Dague,* 505 U.S. 557, 566, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

Based on the above discussion, the Court finds the lodestar amount to be appropriate and denies plaintiffs' request to enhance the lodestar.

## IV. Costs

Plaintiffs request costs and expenses in the amount of $1,116,166.90. Plaintiffs provided documentation of their costs and expenses. *See* Wallace Decl. at ¶ 159 and Ex. YYY; Allen Decl., ¶ 32 and Ex. C; Shiu Decl. ¶¶ 39, 41 and Exs. D and F. Defendant challenges many of plaintiffs' claimed expenses and asserts that only $600,000 in costs should be awarded. In response to defendant's assertions, plaintiffs submitted more detailed support for their claimed expenses. Wallace Reply Decl. at ¶¶ 179–184; Allen Supp. Decl. at ¶ 16; Keane Reply Decl. at ¶ 12–13.

On October 26, 2004, plaintiffs submitted a bill of costs to the Clerk of the Court in the amount of $428,087,14. [Docket # 607] The Clerk of Court allowed costs in the amount of $401,510.18, excluding $26,576.96 because that portion of the costs fell outside Civil L.R. 54–3. Plaintiffs now request the remaining $26,576.96 in their motion for attorneys' fees and costs. *See* February 23, 2005 Wallace letter, Ex. A.

In response, on March 1, 2005 defendant filed a motion with this Court to review the Clerk's taxation of costs. Defendant challenges the award of "fees for exemplification and copies of papers necessarily obtained for use in the case" for $309,827.22 and the award of $89,730.70 for court reporter and transcript fees.

Plaintiffs argue that the Court should deny defendant's motion to review the Clerk's taxation of costs because it is untimely. The Clerk's Order taxing costs was entered on Friday, February 18, 2005. Under Civil L.R. 54–5, any motion for review of the Clerk's taxation of costs must be filed within five days of the entry of notice of taxation of costs. Monday, February 21, 2005 was a holiday; therefore, defendant's motion was due on Monday, February 28, 2005. However, defendant filed the motion one day late, on March 1.

The Court will not deny defendant's motion as untimely because the L.R. 54–5 also provides that "[i]f no motion is filed within 15 days of the Clerk's taxation of costs, the Clerk's determination of costs shall be final." This demonstrates that courts can consider motions filed more than 5 days after entry of notice of taxation of costs. Defendant has presented an explanation for the late filing, which the Court accepts, and plaintiffs have not demonstrated any prejudice caused by the one-day delay in filing. Therefore, the Court denies plaintiffs' request to deny the motion as untimely.

■ The Court will also not review the Clerk's Taxation of Costs under an abuse of discretion standard, as requested by plaintiffs. The case law relied upon by plaintiffs consist of opinions from the courts of appeals, not the district court.

Therefore, this Court will review the Clerk's Taxation of Costs de novo.

## A. Copying

Defendant asserts that the copying costs are excessive because many of the documents obtained were unnecessary to develop facts at trial and requests that the Court cut plaintiffs' copying costs in half. As discussed above, the Court finds that plaintiffs discovery efforts were reasonable and will not reduce plaintiffs' copying costs on that basis.

Plaintiffs present evidence that the majority of documents reproduced were government records and other discovery documents. All documents reproduced in-house by Skadden, as well as 70% of documents reproduced in-house by ELC and Schneider & Wallace, were government records or other discovery documents. *See* Supp. Wallace Decl. Documentation of Costs at ¶ 5; Supp. Shiu Decl. In Support of Bill of Costs at ¶¶ 6, 8. These reproduction costs are allowable under Local Rule 54–3(d).

■■■ However, ELC and Schneider & Wallace also assert that they are entitled to recovery for the remaining 30% of reproduction expenses, totaling $41,546.44.[8] Counsel contends that these expenses are compensable because they are for copies of papers "necessarily obtained for use in the case," which is the standard for taxable costs under 28 U.S.C. § 1920. *See* Supp. Wallace Decl. Documentation of Costs at ¶ 6; Shiu Decl. In Support of Bill of Costs at ¶ 7. However, counsel has not provided any information beyond a conclusory statement regarding these reproductions. ELC has not identified any copies it made that were not included in its request for costs; certainly, over the course of 5 years of litigation ELC made copies of documents that were not "necessarily obtained

for use in the case." Although the Court agrees with plaintiffs that they should not have to identify each copy made, conclusory statements are not sufficient for the Court to determine if the costs are reasonable. Plaintiffs have made no attempt to identify what documents they reproduced, as they did for the government records and other discovery documents. Therefore, the Court reduces plaintiffs' award by $41,546.44.

Finally, defendant argues that plaintiffs are not entitled to recover costs for digitally scanning government records and discovery documents produced by defendant. This cost totaled approximately $95,000. The Court agrees with the Clerk of the Court's determination that these costs are compensable. Plaintiffs utilized digital scanning to reproduce documents produced by defendant, which certainly is a form of "reproduction." Given that Local Rule 54–3(d) allows for recovery of costs for reproduction, the Court finds that plaintiffs are entitled to recover their costs. Additionally, recovery is also appropriate because defendant requested that the documents be scanned in order to provide defendant with a copy. *See* Allen Decl. In Support of Bill of Costs at ¶ 6. It is unfair for defendant to request that plaintiffs reproduce documents in a certain manner during discovery and then contest that form of reproduction at the fee motion.

## B. Word processing

■■■ Plaintiffs request compensation for $72,900 in word processing costs. *See* Allen Decl., Ex. C. The Court finds that word processing is not recoverable, as it is an overhead expense that counsel must bear. *See Guckenberger,* 8 F.Supp.2d at 111. Therefore, the Court will reduce plaintiffs' costs by $72,900.

---

8. ELC requests $18,995.23 and Schneider & Wallace requests $22,551.21.

### C. Postage, fax, and phone charges .

Defendant asserts that postage, fax, and long distance phone charges also constitute overhead that should not be reimbursed by defendant. The Court finds that plaintiffs are entitled to recovery for these expenses.

### D. Expert fees

██ Defendant argues that plaintiffs are not entitled to recover expert fees because plaintiffs have not provided detailed information for each expert. However, plaintiffs provided this information in their reply. *See* Wallace Reply Decl. at ¶¶ 179–184; Keane Reply Decl. at ¶¶ 12–15. Based on the discussion above, the Court finds that plaintiffs' use of experts in the case was appropriate. *See* Section II(D)(4). Therefore, the Court finds that plaintiffs are entitled to recover all expert fees.

### E. Deposition transcripts

Defendant argues that the Court should reduce plaintiffs' request for court reporter fees because many of the depositions taken were excessive and not necessarily obtained for use in the case. Defendant also argues that it was unnecessary for plaintiffs to order expedited transcripts.

The Court Clerk reduced plaintiffs' request for court reporter fees from $115,334.98 to $89,730.70. The Court finds that this is an appropriate award of costs for court reporter fees. As discussed above, the Court finds that the depositions conducted by plaintiffs were reasonable. Additionally, plaintiffs have explained that most of the expedited transcripts were ordered in the three months before trial as discovery was concluding. *See* Wallace Reply Decl. at ¶ 192. The Court accepts this representation and finds that plaintiffs are entitled to $89,730.70. However, plaintiffs have not presented any argument in support of this Court overturning the finding of the Court Clerk that its costs for deposition transcripts should be reduced by $25,604.28. Therefore, the Court will reduce plaintiffs' award by $25,604.28.

### F. Pearl costs

As discussed above, the Court finds that Richard Pearl's efforts in this case were excessive. Therefore, the Court finds that plaintiffs are not entitled to recover costs incurred by Pearl and reduces plaintiffs' costs by $112.10.

## V. Summary

The Court recognizes that the SFUSD, like all public school systems, is in a perpetually precarious financial condition and that the award of attorneys' fees in this case is substantial. However, it is important to remember that the District has largely brought this award of attorneys' fees and costs on itself. This case was factually complex, as it involved numerous students and District facilities. Additionally, the case dragged on for nearly five years, in large part because the District sought several lengthy delays, resisted discovery, filed an eleventh-hour motion to decertify the class after first having stipulated to its certification, and was unable or unwilling to resolve critical details of the ultimate settlement template until six days before trial was to begin. Liability was never in serious question in this case, and plaintiffs prevailed on partial summary judgment. However, the District tenaciously fought each stage of the litigation and caused delay throughout discovery, which substantially increased the fees and costs.

The Court has made strenuous efforts to eliminate any unreasonable fees and costs claimed by plaintiffs in this case. However, this has been an undertaking it has done largely on its own, because defendant has provided very little help. Defendant relies mainly on broad, sweeping statements that attack counsel for the plaintiffs

but provide little detail or concrete analysis. The Schratz Declaration is not helpful, as it lacks specificity and is not tailored to address the needs of class action litigation or trial work. Defendant's argument that counsel's hourly rate should be set based on the size of counsel's firm is contrary to the law, and its accusation that plaintiffs' counsel should be penalized for preparing for trial, which was then just six days away, is illogical. Defendant's arguments about plaintiffs' fees and costs mirror the arguments made throughout this litigation—long on animosity but short on practical content.

Therefore, the Court finds that plaintiffs are entitled to recover most of the fees and costs they have requested. However, as described above, reductions are appropriate in some instances. Below is a summary of the proper fees and costs, as found by the Court.

### 1. Attorneys' Fees

*Skadden, Arps, Slate, Meagher & Flom*

| | | |
|---|---|---|
| Jose Allen | $460 × 1,846.50 hours | $ 849,390.00 |
| Scott Birkey | $225 × 88.80 hours | $ 19,980.00 |
| Benjamin Ostapuk | $350 × 80.50 hours | $ 28,175.00 |
| Carita Shanklin | $260 × 55.55 hours | $ 14,443.00 |
| Summer Associates | $100 × 55.70 hours | $ 5,570.00 |
| Legal Assistants | $110 × 1,352.28 hours | $ 148,750.80 |
| Paralegals | $50 × 225.95 hours | $ 11,297.50 |
| | SUB–TOTAL: | $1,077,606.30 |
| | 5% Reduction: | ($ 53,880.32) |
| | 10% Reduction: [9] | ($ 89,200.80) |
| | TOTAL: | $ 934,525.18 |

*Schneider & Wallace*

| | | |
|---|---|---|
| Todd Schneider | $435 × 26.80 hours | $ 11,658.00 |
| Guy Wallace | $435 × 3,380.60 hours | $1,470,561.00 |
| Clint Brayton | $350 × 61.20 hours | $ 21,420.00 |
| Sarah Colby | $350 × 256.40 hours | $ 89,740.00 |
| Jinoy Kim | $350 × 165.60 hours | $ 57,960.00 |
| Josh Konecky | $385 × 29.50 hours | $ 511,357.50 |
| Elisa Laird | $225/$100 × 2,004.70 hours | $ 407,920.00 |
| Galin Luk | $350 × 149.00 hours | $ 52,150.00 |
| Wendy Musell | $325 × 2,159.50 hours | $ 701,837.50 |
| William Wilson | $200 × 15.00 hours | $ 3,000.00 |
| Law Clerks/Paralegals | $100 × 735.70 hours | $ 73,570.00 |
| | SUB–TOTAL: | $2,901,174.00 |
| | 5% Reduction: | ($ 145,058.70) |
| | TOTAL: | $2,756,115.30 |

*The Legal Aid Society—Employment Law Center*

| | | |
|---|---|---|
| Lewis Bossing | $290 × 2,752.98 hours | $ 798,364.20 |
| Claudia Center | $395 × 223.60 hours | $ 88,322.00 |

---

**9.** This reduction applies to Allen, Ostapuk and Shanklin for billing in .25 hourly units.

| | | |
|---|---|---|
| Sarah Colby | $350 × 59.80 hours | $ 20,930.00 |
| Mary K. Gillespie | $350 × 2,128.80 hours | $ 745,080.00 |
| Jinny Kim | $325/$100 × 82.88 hours | $ 8,599.00 |
| Elizabeth Kristen | $250 × 47.27 hours | $ 11,817.50 |
| William C. McNeill, III | $490 × 13.37 hours | $ 6,551.30 |
| Patricia Shiu | $460 × 795.82 hours | $ 366,077.20 |
| Guy Wallace | $435 × 213.80 hours | $ 93,003.00 |
| Diane Webb | $225 × 122.63 hours | $ 27,591.75 |
| Law Clerks | $100 × 1,025.87 hours | $ 102,587.00 |
| Paralegals | $100 × 1,359.70 hours | $ 135,970.00 |
| | SUB–TOTAL: | $ 2,404,892.95 |
| | 5% Reduction: | ($ 120,244.65) |
| | TOTAL: | $ 2,284,648.30 |

*Law Offices of Richard M. Pearl*

| | | |
|---|---|---|
| Richard Pearl | $475 × 0 hours | $0 |
| | TOTAL: | $0 |

TOTAL ATTORNEYS' FEES: $ 5,975,288.78

### 2. Costs

| | |
|---|---|
| Total Costs Requested: | $ 1,116,166.99 |
| Richard Pearl's Costs: | ($ 112.10) |
| Undocumented Copying: | ($ 41,546.44) |
| Word Processing: | ($ 72,900.00) |
| Reductions by Clerk of Court: | ($ 26,576.96) |
| TOTAL: | $ 975.031.49 |

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART plaintiffs' motion for attorneys' fees and costs [Docket # 585] and GRANTS IN PART defendant's motion for review of Clerk's taxation of costs [Docket # 671]. The Court finds that plaintiffs are entitled to an award of $5,975,288.78 in attorneys' fees and $975,031.49 in costs.

**IT IS SO ORDERED.**