**Lauren M. CRUZ, by her next friend Jean CRUZ; Valerie Herrera, by her next friend Carolina Herrera; Jennifer N. Cerros; Catherine Grempel, by her next friend Tina Grempel, individually and on behalf of all those similarly situated, Plaintiffs,**

v.

**ALHAMBRA SCHOOL DISTRICT; The City of Alhambra; Russell Lee Sung, Victor Sandoval, Lou Torres, William A. Vallejos, John H. Nuñez, Robert L. Gin, Ruth E. Castro, and Barbara A. Messina, in their official capacities, Defendants.**

Case No. CV 04–1460 ABC (Mcx).

United States District Court,
C.D. California.

March 3, 2009.

Claudia Center, Elizabeth Kristen, Patricia A. Shiu, Legal Aid Society, Employment Law Ctr., San Francisco, CA, Vicky L. Barker, California Women Law Center, Los Angeles, CA, for Plaintiffs.

Gary R. Gibeaut, John W. Allen, Nancy Ann Mahan–Lamb, Nancy Ann Mahan–Lamb, Gibeaut Mahan and Briscoe, Joseph M. Montes, Burke Williams & Sorensen, Los Angeles, CA, Harold W. Potter, Kimberly Hall Barlow, Michael R. Capizzi, Jones & Mayer, Fullerton, CA, for Defendants.

## ORDER RE: ATTORNEY FEES AND COSTS

AUDREY B. COLLINS, Chief Judge.

Contrary to the Supreme Court's hope that attorneys' fees motions not become a "second major litigation," this matter presents precisely such a situation. The parties have filed thousands of pages of papers in battling over the appropriate fees to be awarded to Plaintiffs after they successfully concluded this Title IX matter through settlement. The fighting has ranged from the reasonableness of Plaintiffs' overall claimed hours down to the ability to recover $1.34 for a bottle of water purchased during travel to a status conference.

In addition to the initial motion for fees, Plaintiffs filed a Rule 59(e) motion for reconsideration and ultimately appealed the Court's determination of fees. The Ninth Circuit then vacated and remanded for recalculation. Pursuant to the Ninth Circuit's mandate, this Court has pending before it Plaintiffs' request for attorneys' fees incurred in litigating this matter prior to the filing of the Rule 59(e) motion. Also pending before this Court is Plaintiffs' motion for attorneys' fees and costs incurred on remand.

Upon consideration of the parties' papers and the case file, the Court hereby rules as follows.

## I. BACKGROUND

On March 4, 2004, Plaintiffs Lauren M. Cruz, Valerie Herrera, Jennifer N. Cerros, and Catherine Grempel (collectively "Plaintiffs") filed this class action lawsuit against Defendants Alhambra School District (the "District") and the City of Alhambra (the "City") (collectively "Defendants"). Plaintiffs alleged that Defendants engaged in unlawful sex discrimination against female student athletes at Alhambra High School pursuant to Title IX of the Education Amendments of 1972, the United States Constitution, the California Constitution, and California's anti-discrimination laws. The Court certified the class on October 4, 2004.[1]

Following the order certifying the class, the parties spent approximately a year mediating and negotiating before reaching resolution of all of the pending claims. The settlements provide for wide-ranging changes, giving substantial benefits to many young women student-athletes. The settlements include: the creation of two new softball fields; the dedication of new locker room facilities for female students; providing equal access to weight rooms and other facilities, as well as for desirable practice and game times; equitable fund-

---

1. This matter was previously assigned to Judge Tevrizian, but was reassigned to Chief Judge Collins on remand because Judge Tevrizian retired while the appeal was pending.

ing and fund-raising opportunities; equitable publicity; and enhanced coaching. *See, e.g.,* Center Initial Decl. ¶¶ 80–91. The settlements further provide for a grievance policy, Title IX training, and future monitoring. *See, e.g., id.* ¶¶ 92–95.

## A. DETERMINATION OF INITIAL FEE REQUEST

Plaintiffs filed a motion for attorneys' fees and costs on January 10, 2006 (the "Initial Fee Motion"). That motion requested fees and costs incurred both in litigating the merits of the case and for work done on the Initial Fee Motion and reply brief. In connection with their Initial Fee Motion, Plaintiffs seek $767,944.69 in fees,[2] plus a 25% enhancement. On February 27, 2006, the Court granted the Initial Fee Motion in part ("Initial Fee Order"). As a threshold matter, the Court ruled that Plaintiffs are prevailing parties entitled to attorneys' fees under 42 U.S.C. § 1988. Initial Fee Order at 5–6. But the Court ruled that the hours claimed were unreasonable given the non-complex nature of the matter, unnecessary duplication of effort, excessive inter- and intra-office conferencing, and billing for clerical and administrative tasks. *Id.* at 10–16. The Court also ruled that Plaintiffs failed to prove that the rates requested are reasonable because they were improperly based on "hourly charges claimed by large, well known highly regarded law firms" rather than the local legal community as a whole, and were otherwise too high given the "inefficient manner in which this case was conducted." *Id.* at 16–19. Based on these findings, the Court reduced Plaintiffs' proposed lodestar amount by 50%. *Id.* at 19. The Court also denied Plaintiffs' request for a lodestar enhancement. *Id.* at 20.

## B. DETERMINATION OF RULE 59(E) MOTION

Plaintiffs then filed a motion to reconsider the Initial Fee Order pursuant to Fed. R.Civ.P. 59(e), arguing that the Court improperly failed to include fees incurred after filing the Initial Fee Motion (*i.e.,* fees related to the reply brief and the final settlement approval hearing). On May 1, 2006, the Court denied the motion ("Rule 59(e) Order"). The Court expressed concern that Plaintiffs failed to adequately indicate that they would be adjusting their fees on reply and failed to provide specific documentation detailing the new fees. Rule 59(e) Order at 5–8. The Court also found that the additional fees reflected "continued inefficiencies and unreasonable duplication of effort." *Id.* at 8.

## C. NINTH CIRCUIT MANDATE

Plaintiffs timely appealed both the Initial Fee Order and the Rule 59(e) Order. The Ninth Circuit vacated the Initial Fee Order and remanded it to this Court for recalculation. Ninth Circuit Memo. at 581. The Ninth Circuit held that the Court erred in the Initial Fee Order by failing to use the lodestar method and failing to explain how the purported deficiencies in Plaintiffs' fee application correlated to the percentage of the fee reduction. *Id.* at 580–81. The Ninth Circuit instructed that, in conducting the lodestar analysis on remand, the Court should carefully consider (1) the number of years spent litigating the case, (2) the number of drafts of the settlement agreements prepared and reviewed, (3) the considerable skill and expertise of Plaintiffs' counsel, and (4) the excellent results obtained. *Id.* at 581 n. 5.

---

**2.** Plaintiffs have amended the amount requested on numerous occasions. The above amount reflects the amount previously awarded by the Court (the "undisputed amount") and the additional, revised amount sought on remand in connection with the Initial Fee Motion. *See* Kristen Remand Reply Decl. ¶ 17.

The Ninth Circuit reversed outright the determination in the Rule 59(e) Order that Plaintiffs could not recover the fees incurred after filing their Initial Fee Motion. *Id.* at 581–82. The Ninth Circuit rejected the contention that insufficient notice was provided in the Initial Fee Motion that additional fees would be sought and also rejected the contention that Plaintiffs had submitted insufficient evidence to support the additional award. *Id.* at 581–82.

### D. ADDITIONAL FEES AND COSTS SOUGHT ON REMAND

In addition to the issues raised by the Ninth Circuit's Mandate, Plaintiffs filed a motion seeking further attorneys' fees and costs associated with pursuing this matter on remand. Plaintiffs also assert that they are entitled to recover post-judgment interest on the fees related to the Initial Fee Motion.

## II. DISCUSSION

Before the Court are several issues for determination. First, the Court must determine the amount of fees to be awarded in connection with the Initial Fee Motion. Second, the Court must determine whether Plaintiffs are entitled to recover post-judgment interest on that amount. Lastly, the Court must determine whether Plaintiffs are entitled to fees and costs on remand and, if so, the amount thereof.

### A. INITIAL FEE REQUEST

■ Litigants in the United States generally pay their own attorneys' fees, regardless of the outcome of a case, although Congress may provide otherwise by statute. *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 978 (9th Cir.2008). Once a party has demonstrated that it is entitled to some award of fees, the Ninth Circuit requires a district court to determine the amount of such an award by first calculating the "lodestar" figure. *Id.* "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (quoting *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145, 1149 n. 4 (9th Cir.2001)). The lodestar is presumed to provide reasonable fees, but "the district court may, if circumstances warrant, adjust the lodestar amount to account for other factors which are not subsumed within it." *Camacho,* 523 F.3d at 978 (quoting *Ferland,* 244 F.3d at 1149 n. 4).

### 1. PLAINTIFFS' CLAIMED LODESTAR AMOUNT

Plaintiffs claim a lodestar of $767,944.69 for fees sought in connection with the Initial Fee Motion:

| Biller | Hours Claimed in Initial Motion | Hours Claimed in Initial Reply | Hours After Filing Initial Reply[3] | Total Hours | Rate | Total Amount |
|---|---|---|---|---|---|---|
| William McNeil | 4.45 | 0 | 0 | 4.45 | $490 | $2,180.5 |
| Patricia Shiu | 326.86 | 62.12 | 7.0 | 395.98 | $470 | $186,110.6 |
| Vicky Barker | 216.1 | 36.3 | 0 | 252.4 | $410 | $103,484 |

**3.** Plaintiffs initially included anticipated hours for work to be done the day of filing the Initial Reply and thereafter. *See* Shiu Initial Reply Decl. Ex. I. On remand, Plaintiffs replaced those anticipated hours with the actual hours worked. Kristen Remand Reply Decl. Ex. H.

| | | | | | | |
|---|---|---|---|---|---|---|
| Claudia Center | 484.95 | 9.78 | 0 | 494.73 | $400 | $197,892 |
| Nancy Solomon | 308.2 | 0 | 0 | 308.2 | $325 | $100,165 |
| Elizabeth Kristen | 285.87 | 69.0 | 10.6 | 365.47 | $275 | $100,504.25 |
| Cacilia Kim | 0 | 14.7 | 0 | 14.7 | $275 | $4,042.5 |
| Sharon Terman | 0 | 57.67 | 0 | 57.67 | $225 | $12,975.75 |
| Anya Lakner | 0 | 9.7 | 0 | 9.7 | $200 | $1,940 |
| LAS–ELC Paralegals | 262.71 | 0.6906 [4] | 0 | 263.4006 | $150 | $39,510.09 |
| CWLC Paralegals | 11.0 | 0 | 0 | 11.0 | $100 | $1,100 |
| LAS–ELC Law Clerks | 90.5 | 0 | 0 | 90.5 | $100 | $9,050 |
| CWLC Law Clerks | 89.9 | 0 | 0 | 89.9 | $100 | $8,990 |

*See* Shiu Initial Reply Decl. Exs. A, I; Kristen Remand Reply Decl. Ex. H. Defendants object to Plaintiffs' claimed lodestar, asserting that the number of hours billed and the hourly rates are not reasonable.

▮▮▮▮ In calculating the lodestar, the Court takes into account the factors outlined in the Ninth Circuit Mandate: (1) the number of years Plaintiffs litigated the case; (2) the number of drafts of the settlement agreements; (3) the skill and expertise of Plaintiffs' counsel; and (4) the excellent results obtained. Ninth Circuit Memo. at 581 n. 5. These four factors militate in favor of the reasonableness of Plaintiffs' claimed lodestar.

### a. The Number of Years Spent Litigating

Plaintiffs began investigating this matter in January 2003 and filed their complaint in March 2004. *See, e.g.,* Barker Initial Decl. ¶ 16. The case was litigated until final approval of the settlements in January 2006. Thus, Plaintiffs litigated this matter for roughly three years.

### b. The Number of Draft Settlement Agreements

Drafting and finalizing the settlement agreement with the District was a significant undertaking. Plaintiffs drafted the initial settlement agreement. *See* Center Initial Decl. ¶ 45. They met with the District at least six times by phone, with those conferences sometimes lasting two or more hours. *Id.* at ¶ 46. During the course of the negotiations, Plaintiffs and the District exchanged roughly 30 drafts of the agreement, each of which was more than 50 pages long. *Id.* at ¶ 48.

The City did not participate in these settlement negotiations, but instead separately negotiated a draft settlement agreement with Plaintiffs. *Id.* at ¶¶ 49, 61.

### c. The Skill and Expertise of Plaintiffs' Counsel

It is clear that Plaintiffs' counsel has considerable skill and expertise. Plain-

---

4. Plaintiffs claimed 9.69 hours in paralegal work in the Initial Reply but calculated a lodestar for that work of only $103.59. *See* Shiu Initial Reply Decl. Ex. I. The Court reduces the number of hours claimed accordingly.

tiffs' attorneys are affiliated with two non-profit organizations: the Legal Aid Society—Employment Law Center ("LAS-ELC") and the California Women's Law Center ("CWLC"). LAS–ELC is nationally-recognized for its expertise in challenging discriminatory or otherwise impermissible employment and educational access practices. *See, e.g.,* Shiu Initial Decl. ¶ 4. Similarly, CWLC has extensive expertise in sex discrimination and Title IX, in particular. *See, e.g.,* Barker Initial Decl. ¶ 5. And the individual attorneys demonstrated significant skill and expertise in handling the litigation.

### d. The Excellent Results Obtained

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This will normally encompass all hours reasonably expended on the litigation. *Id.* In cases of "exceptional success," an enhancement above the lodestar may be warranted. *Id.* Here, the results obtained were "undeniably excellent." Ninth Circuit Memo. at 581 n. 5. Indeed, Plaintiffs successfully utilized Title IX to obtain far-reaching changes that significantly benefit many young women.

### 2. REASONABLENESS OF HOURS CLAIMED BY PLAINTIFFS

■ Mindful of the four factors analyzed above, the Court now turns to calculating the lodestar. In order to calculate the lodestar, the Court must determine the number of hours "reasonably expended on the litigation." *Hensley,* 461 U.S. at 433–34, 103 S.Ct. 1933. Hence, the Court must eliminate from the lodestar time that was unreasonably, unnecessarily, or inefficiently devoted to the case. *Id.* at 434, 103 S.Ct. 1933. Plaintiffs here are claiming

2,358.1 hours spent on this litigation. Defendants contend that Plaintiffs' claimed hours should be reduced significantly, for the reasons discussed below. *See, e.g.,* District's Initial Opp'n at 13.[5]

### a. Duplication of Effort and Excessive Billing

Billed time that includes unnecessary duplication of effort should be excluded from the lodestar. *See Herrington v. County of Sonoma,* 883 F.2d 739, 747 (9th Cir.1989). "[C]ourts ought to examine with skepticism claims that several lawyers were needed to perform a task, and should deny compensation for such needless duplication as when three lawyers appear for a hearing when one would do." *Democratic Party of Wash. State v. Reed,* 388 F.3d 1281, 1286 (9th Cir.2004) (internal citations omitted). Of course, there is some degree of duplication that is necessary in any case. *Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008). Defendants identified nearly 600 hours that they claim involve unnecessarily duplicative billing by Plaintiffs' counsel. District Initial Opp'n at 20–21.

■ The Court's review of the record indicates that some of the hours claimed did result from unnecessary duplication. For example, Shiu, Barker, Center and Kristen each billed to inspect the relevant athletic facilities. *See* Gibeaut Initial Decl. Ex. J. Plaintiffs explained that Kristen filmed the inspection, while Shiu, Center, and Barker took notes and measurements. Shiu Initial Reply Decl. ¶¶ 6, 7. Among other things, they also counted lockers and checked the cleanliness and functioning of the bathrooms. *Id.* at ¶ 7. Although an understanding of the disparities in the facilities is important, that does not justify

---

**5.** The arguments by the District and City do not always overlap exactly, but they are significantly similar. Thus, the Court will gener-

ally refer to them as "Defendants" without differentiation.

having four attorneys (three of whom request fees of $400 or more per hour) personally conduct the actual inspection.

■ Plaintiffs also billed to have Shiu, Center, Barker and Solomon appear at the January 31, 2005 mediation. *See* Gibeaut Initial Decl. Ex. J; Shiu Initial Reply Decl. ¶ 6, Ex. C. Participation of more than one attorney at a mediation does not automatically constitute an unnecessary duplication of effort. *See Kim v. Fujikawa,* 871 F.2d 1427, 1435 n. 9 (9th Cir.1989). But Plaintiffs do not provide an adequate explanation as to why it was necessary to have four attorneys (with requested rates of $470, $410, $400 and $325 per hour) attend the mediation. Plaintiffs assert generally that they only billed for the time of attorneys that participated in, "or might be needed" at, a hearing or conference, and that multiple attorneys attended hearings or conferences because "several attorneys had specific knowledge about discrete sub issues." Initial Reply to District's Opp'n at 19. It is clear that Plaintiffs' counsel decided to take a "team" approach to handling this matter. Nonetheless, that explanation is insufficient to show that it was necessary to have four attorneys attend the mediation. *See, e.g., Anderson v. Rochester–Genesee Regional Transp. Auth.,* 388 F.Supp.2d 159, 164–65 (W.D.N.Y.2005).

Similarly, Shiu, Center, Barker, Solomon, and Kristen spent a total of 194 hours in connection with Plaintiffs' class certification motion. Shiu Initial Reply Decl. ¶¶ 14, 51.[6] While having five attorneys work on class certification may not be unnecessarily duplicative in all instances, it was here. At an earlier status conference,

the Court indicated that it would certify a class in this case. *See, e.g.,* Shiu Initial Decl. ¶ 70. Moreover, Plaintiffs acknowledge that Defendants had "no particular legal argument for why certification was not appropriate." *Id.* at ¶ 71. Indeed, the Court's order granting class certification makes clear that Defendants did not dispute much of Plaintiffs' motion. *See* Order Granting Plaintiffs' Motion for Class Certification for Injunctive Relief (Oct. 6, 2004). Plaintiffs did not need to have five attorneys spend nearly 200 hours preparing straightforward class certification briefing.

Nor does the Court's review of the record reveal that these were isolated occurrences. Accordingly, the Court finds it necessary to calculate the lodestar based on a modest reduction to the hours claimed by Plaintiffs, as discussed below.

### b. Excessive Conferencing

■ Time billed for internal conferencing is recoverable to the extent it is reasonably necessary to conducting the litigation. *See Davis v. City & County of San Francisco,* 976 F.2d 1536, 1545 (9th Cir. 1992). Defendants identified roughly 264 hours of inter- and intra-office communications within and between LAS–ELC and CWLC, representing roughly 13% of the total hours claimed in the Initial Fee Motion. *See* District's Initial Opp'n at 18.[7] This is the equivalent of spending approximately one hour conferencing for every eight hours billed. Unfortunately, neither Plaintiffs nor Defendants provides significant detail as to whether the time spent on these communications is reasonable. Plaintiffs assert in blanket terms that the hours were reasonable in light of the "is-

---

6. The 194 hours include work done on the initial motion, reply brief, declarations, preparing for and attending the hearing, and conferring with Plaintiffs. Shiu Initial Reply Decl. ¶ 14.

7. Plaintiffs subsequently amended that requested fee amount in their reply brief to include additional hours worked after the Initial Fee Motion was filed. The above figure does not include conferencing time added through amendment.

sues and challenges that plaintiffs faced in investigating, filing, litigating and resolving this matter." *See, e.g.,* Shiu Initial Reply Decl. ¶ 40. Plaintiffs also assert that much of the conferencing was necessitated by the settlement negotiations. *See id.* ¶ 42. Unfortunately, Defendants do not provide specificity in challenging these hours. Rather, they appear to rely solely on generalized assertions that the total fees for conferencing appears to be too high. *See, e.g.,* District's Initial Opp'n at 18.

■ Based on the Court's review of the billing records and Plaintiffs' explanations for the hours billed conferencing, the Court finds that the hours claimed are on the higher end of what it would expect as reasonably necessary for litigating this matter. The Court finds that a modest reduction to Plaintiffs' claimed hours will compensate for any excessive conferencing.

#### c. Non–Billable Clerical Work

■ Parties cannot recover fees for conducting clerical matters. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Davis,* 976 F.2d at 1543. Defendants contend that Plaintiffs' claimed hours should be reduced because they billed for clerical work, pointing to entries in which Plaintiffs billed for *inter alia* printing labels and copying documents. While it is clear that some clerical work was improperly billed by Plaintiffs, the Court's review of the record indicates that these hours are relatively few in number in relation to the total fee award. Accordingly, the Court finds that improperly billed clerical work can be properly accounted for through a modest reduction to Plaintiffs' claimed hours.

#### d. Total Reasonable Hours

Accordingly, the Court finds that Plaintiffs' claimed hours are at least somewhat excessive. Especially in light of the factors identified in the Mandate, however, the Court does not believe that the reasonable number of hours is nearly as low as suggested by Defendants. Instead, balancing these factors with the above instances of excessiveness, the Court determines in its discretion that a small reduction is warranted. The Court finds that a 5% reduction is appropriate here.[8] Thus, the lodestar will be calculated at 95% of the hours claimed by Plaintiffs.

### 3. REASONABLENESS OF RATES CLAIMED BY PLAINTIFFS

■ Defendants also argue that the rates claimed by Plaintiffs are unreasonable. The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.1990) (citing *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1214 (9th Cir. 1986)). In analyzing the prevailing market rate, the Court is also mindful that these attorneys have considerable skill and expertise, and of the excellent results obtained. *See* Ninth Circuit Memo. at 581 n. 5.

---

**8.** The Court finds this amount sufficient to cure any overbilling, especially given that Plaintiffs have already exercised their billing judgment before submitting their hours to the Court. *See, e.g.,* Shiu Initial Reply Decl. ¶¶ 24–27.

#### a. Attorneys' Rates

Plaintiffs request the following rates for attorneys:

| | | |
|---|---|---|
| William McNeil | 35 years experience | $490 |
| Patricia Shiu | 23 years experience | $470 |
| Vicky Barker | 21 years experience | $410 |
| Claudia Center | 13 years experience | $400 |
| Nancy Solomon | 9 years experience | $325 |
| Elizabeth Kristen | 5 years experience | $275 |
| Cacilia Kim | 3 years experience | $275 |
| Sharon Terman | 2 years experience | $225 |
| Anya Lakner | 1 year experience | $200 |

*See, e.g.,* Shiu Initial Reply Decl. Exs. A, I. In support of their request, Plaintiffs submitted testimony of private attorneys who handle federal litigation; data on then-current rates charged by Los Angeles area law firms; and rates determined to be reasonable by other courts.

As to the appropriateness of the rates sought the LAS–ELC attorneys, Plaintiffs submitted a declaration from a former LAS–ELC board member and current partner at the law firm of Pillsbury Winthrop Shaw Pittman LLP. *See* Odgers Initial Decl. ¶¶ 2–3. He explained that the LAS–ELC board sets hourly rates by collecting billing rate information from the board members and their firms, as well as from other attorneys working for San Francisco law firms. *Id.* at ¶¶ 5–6. He further declared that the rates sought for Shiu, Center and Kristen in particular are in-line with those charged by attorneys of comparable experience at his firm, and other San Francisco and Los Angeles law firms. *Id.* at ¶¶ 7–9. Plaintiffs made a similar showing for the rates requested for Barker and Solomon by way of declarations from two current CWLC board members and current partners at Los Angeles area law firms. *See* Berkowitz Initial Decl.; Jordan Initial Decl. Plaintiffs also submitted survey evidence of Los Angeles law firm rates in line with those requested here. *See* Shiu Initial Decl. ¶ 56 & Ex. H.

The requested rates are also in line with those awarded to McNeill, Shiu, Center and Kristen in *Lopez v. San Francisco Unified School Dist.,* 385 F.Supp.2d 981 (N.D.Cal.2005). In *Lopez,* Plaintiffs brought suit for alleged violations under the Americans with Disabilities Act and parallel state laws. Following settlement, Plaintiffs sought fees for McNeill, Shiu, Center and Kristen based on rates of $490, $460, $395, and $250, respectively. *Id.* at 987. The court found all of those rates to be reasonable. *Id.* at 991–92. The Court finds *Lopez* constitutes significant support for these attorneys' requested rates. *See United Steelworkers,* 896 F.2d at 407.

None of the parties devoted substantial attention to the specific rates of Kim, Terman and Lakner. The Court has reviewed those attorneys' qualifications and their claimed rates appear reasonable based on case law from this district. *See, e.g., Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,* No. CV 04–9396 CBM (JTLx), 2006 WL 4081215, at *2–4 (C.D.Cal. Dec. 12, 2006).

Defendants raise a variety of arguments to counter Plaintiffs' showing, none of which are persuasive.[9] For example, Defendants contend that it is inappropriate to determine rates for Plaintiffs' attorneys

---

**9.** Defendants rely heavily on an opinion holding that the lodestar should be calculated using the "hourly rate that would be charged by reasonably competent counsel." *See Albion Pacific Property Resources, LLC v. Seligman,* 329 F.Supp.2d 1163, 1170 (N.D.Cal. 2004) (reducing requested rates in determining fees for improper removal pursuant to 28 U.S.C. § 1447(c)). That standard does not take into account the skill and expertise of these particular attorneys. As such, the Court declines to follow *Albion. See Fleming v. Kemper Nat'l Servs., Inc.,* 373 F.Supp.2d 1000, 1011 (N.D.Cal.2005).

using data from large law firms because such firms generally do work in areas of federal litigation that garner higher rates than those charged for civil rights litigation. *See, e.g.,* City's Opp'n to Initial Fee Motion at 17.[10] But Defendants did not come forward with persuasive evidence that Title IX litigation is not comparable with the types of litigation undertaken by large law firms. Plaintiffs' declarants stated that the rates claimed are similar to those charged by attorneys of similar skill and experience "for comparable work." *See, e.g.,* Odgers Initial Decl. ¶ 6; Jordan Decl. Initial ¶ 6. While Defendants dispute that this case was "complex," other courts have found that "Title IX is a complex area of the law and contains relatively few reported decisions to guide practitioners." *Communities for Equity v. Michigan High School Athletic Ass'n,* No. 1:98–cv–479, 2008 WL 906031, at *15 (W.D.Mich. March 31, 2008) (citing *Cohen v. Brown Univ.,* 101 F.3d 155, 169 (1st Cir.1996)). That the type of work done in this case is comparable to the federal litigation conducted by major law firms is borne out by the fact that other courts have relied on data from large firms in determining rates for Title IX litigation. *See Hess v. Ramona Unified School Dist.,* No. 07–cv–0049 W(CAB), 2008 WL 5381243, at *3 (S.D.Cal. Dec. 19, 2008) (setting rates for successful Title IX plaintiffs based on declaration from Latham & Watkins partner).[11]

Defendants also contend that it is inappropriate for Plaintiffs to be awarded all fees based on the rates prevailing at the time of the fee motion, rather than at the time the work was completed. Defendants fail to take into account that "compensation received several years after the services were rendered ... is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed." *Jenkins,* 491 U.S. at 283, 109 S.Ct. 2463. The Court finds it appropriate to award the prevailing market rate at the time of the Initial Fee Motion to compensate Plaintiffs for the delay in receiving fees. *See, e.g., id.* at 283–84, 109 S.Ct. 2463.

Based on all of the evidence regarding the prevailing rate in the community for counsel of similar experience for similar services, the Court finds that the requested rates for all of Plaintiffs' attorneys are reasonable and will calculate the lodestar at their requested rates.

**b. Law Clerks' and Paralegals' Rates**

■ Plaintiffs also seek to recover fees for law clerk and paralegal work. LAS–ELC seeks to recover at rates of $100 for law clerks and $150 for senior paralegals. CWLC seeks to recover at rates of $100 for law clerks and $100 for paralegals. The parties provide very little evidence as to the reasonableness of these rates. While the Court finds that the rates for the law clerks and CWLC's paralegals are in-line with the prevailing market rate, the requested rate of $150 per hour for LAS–ELC's senior paralegals is not. *See Comite de Jornaleros,* 2006 WL 4081215, at *3–4; *see also Lopez,* 385 F.Supp.2d at 992. Instead, the Court finds that a rate of $125 to be in-line with the prevailing market rate and will adjust the rate accordingly in calculating the lodestar.

---

10. It bears noting that Plaintiffs are requesting rates at or *below* those charged by these firms. *See, e.g.,* Berkowitz Initial Decl. ¶ 8 ("If [Vicky Barker] worked at my firm, her time would be billed at, and our clients would be asked to pay, a minimum of $410 an hour and more likely $560 per hour.")

11. Defendants' contention that the rates for Plaintiffs' attorneys should be in accord with rates charged by the attorneys working for the government is inconsistent with Ninth Circuit law. *See Trevino v. Gates,* 99 F.3d 911, 925 (9th Cir.1996).

### 4. LODESTAR AMOUNT FOR INITIAL FEE REQUEST

The Court·determines that the lodestar amount for the Initial Fee Motion is **$723,296.10.** This amount is calculated based on the reasonable hours spent litigating this matter, which is 95% of the hours claimed. The hours are multiplied by the claimed hourly rates, which the Court finds to be reasonable except for LAS–ELC's senior paralegals. Thus, the lodestar amount is as follows:

| Biller | Total Hours | Rate | Total Amount |
|---|---|---|---|
| William McNeil | 4.23 | $490 | $2,072.70 |
| Patricia Shiu | 376.18 | $470 | $176,804.60 |
| Vicky Barker | 239.78 | $410 | $98,309.80 |
| Claudia Center | 469.99 | $400 | $187,996 |
| Nancy Solomon | 292.79 | $325 | $95,156.75 |
| Elizabeth Kristen | 347.20 | $275 | $95,480 |
| Cacilia Kim | 13.97 | $275 | $3,841.75 |
| Sharon Terman | 54.79 | $225 | $12,327.75 |
| Anya Lakner | 9.22 | $200 | $1,844 |
| LAS–ELC Paralegals | 250.23 | $125 | $31,278.75 |
| CWLC Paralegals | 10.45 | $100 | $1,045 |
| LAS–ELC Law Clerks | 85.98 | $100 | $8,598 |
| CWLC Law Clerks | 85.416 | $100 | $8,541 |

### 5. PLAINTIFFS' REQUESTED LODESTAR ENHANCEMENT

 The calculation of the lodestar does not end the Court's inquiry. Instead, the lodestar may be adjusted in light of additional considerations, including the important factor of the results obtained. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Nonetheless, a "strong presumption" exists that the lodestar figure represents a "reasonable fee" and should be enhanced

only in "rare and exceptional cases." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). To overcome the strong presumption that the basic fee is reasonable, the fee applicant bears the burden of coming forward with "specific evidence" that the lodestar amount is unreasonably low. *See Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041, 1045 (9th Cir.2000) (citing *Delaware Valley,* 478 U.S. at 565, 106 S.Ct. 3088). This showing must be based on factors not already subsumed in the lodestar calculation. *Id.*

 Plaintiffs assert that the Court should award a 25% enhancement because the results achieved were excellent. *See, e.g.,* Kristen Remand Reply Decl. Exs. B at 60, C at 27–28.[12] Exceptional results generally do not provide a basis for enhancing the lodestar because the results obtained are generally subsumed within the initial lodestar calculation. *Blum,* 465 U.S. at 900, 104 S.Ct. 1541; *see also* Ninth Circuit Memo. at 581 n. 5 (excellence of results should be included in lodestar calculation). Moreover, not only must the results be excellent to warrant a lodestar enhancement, but an upward adjustment is justified "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged." *Blum,* 465 U.S. at 899, 104 S.Ct. 1541; *see also Lopez,* 385 F.Supp.2d at 998–99.

12. Plaintiffs made a variety of other arguments in the Initial Fee Motion for enhancement, often devoting only one sentence to each. *See* Initial Fee Motion at 23–24. On appeal, Plaintiffs argued only that an enhancement is warranted by the results obtained. *See, e.g.,* Kristen Remand Reply Decl. Exs. B at 60, C at 27–28. Thus, those arguments have been waived to the extent they were not purposefully abandoned. *See, e.g., United States v. Nagra,* 147 F.3d 875, 882 (9th Cir.1998); *see also* Remand Reply at 1 n. 1 (asserting that Plaintiffs rely on their appellate briefing as to the recalculation of fees in the Initial Fee Order). In any event, the Court has reviewed the other arguments and finds that they do not warrant an enhancement.

■ Plaintiffs attempt to meet their burden by offering declarations from their counsel describing the results of the settlement as better than settlements obtained in other cases. *See, e.g.,* Shiu Initial Decl. ¶ 26; Barker Initial Decl. ¶ 38. While the results of the settlement are excellent, blanket assertions that the results here are better than results in other cases is not "specific evidence" showing that the results achieved in this case would not have been achieved by other similarly paid attorneys. Indeed, case law cited in other sections of Plaintiffs' briefing suggests that the results here are not so extraordinary. *See Communities for Equity,* 2008 WL 906031, at *2, 5 n. 8 (awarding no lodestar modification in Title IX case involving significant statewide changes to high school athletics).

Plaintiffs also submitted several declarations articulating the important benefits of sports to young women and the broader athletic opportunities they will have as a result of the settlements. *See, e.g.,* Center Initial Decl. ¶¶ 80–96; Barker Initial Decl. ¶¶ 39–44. The Court has no reason to disagree that the settlement will provide great benefits to many young women; however, that does not make the case "exceptional." *See Blum,* 465 U.S. at 900 n. 16, 104 S.Ct. 1541; *Lopez,* 385 F.Supp.2d at 998.

Accordingly, the Court denies the request for a 25% enhancement.

## B. PLAINTIFFS' REQUEST FOR POST–JUDGMENT INTEREST

Plaintiffs also seek to collect post-judgment interest on the fees awarded in connection with the Initial Fee Motion. They seek interest on two sets of fee amounts: (1) the fees and costs awarded in the Initial Fee Order (the "Undisputed Amount" of $335,831.63 in fees and $19,968.06 in costs) and (2) the fees awarded by the Court on remand above the undisputed amount of fees (the "Additional Amount" of $387,464.47). The Court finds that post-judgment interest is available on both amounts.

## 1. INTEREST ON THE "ADDITIONAL AMOUNT"

Plaintiffs assert that they are entitled to post-judgment interest accruing from the date of the Initial Fee Order for the Additional Amount of fees awarded in this order. Thus, they seek to recover interest accruing from February 28, 2006 to the date of this Order on the $387,464.47 awarded above. A party may recover interest on attorneys' fees awarded under 42 U.S.C. § 1988. *Spain v. Mountanos,* 690 F.2d 742, 748 (9th Cir.1982) (discussing 28 U.S.C. § 1961). "Interest runs from the date that entitlement to fees is secured, rather than from the date that the exact quantity of the fees is set." *Friend v. Kolodzieczak,* 72 F.3d 1386, 1391–92 (9th Cir.1995). This Court held that Plaintiffs are entitled to recover fees in the Initial Fee Order, entered on February 28, 2006. Thus, post-judgment interest would ordinarily accrue from that date.

Nonetheless, Defendants assert that post-judgment interest cannot be awarded at all here because the Ninth Circuit mandate did not include specific instructions to allow it. For this proposition, Defendants rely on *Planned Parenthood of the Columbia/Willamette Inc. v. American Coalition of Life Activists,* 518 F.3d 1013, 1022 (9th Cir.2008) (discussing Fed. R.App. P. 37). Defendants' argument is unavailing, as made clear by *Planned Parenthood* itself:

Rule 37(b) governs *only* when our mandate "modifies or reverses a judgment with a direction that a money judgment be entered in the district court." When the court of appeals remands to the district court to determine the amount of a damages award, then the mandate does not direct the entry of a money

judgment. The *Briggs* [*v. Pennsylvania R.R. Co.*, 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948) ] and Rule 37(b) limitations on district court authority are therefore not implicated . . .

518 F.3d at 1018–19 (emphasis in original). The Ninth Circuit mandate in this case vacated the Initial Fee Order with instructions to recalculate the fees. *See* Ninth Circuit Memo. at 581. Thus, the award of post-judgment interest is not barred.

▮▮ Post-judgment interest began accruing on February 28, 2006 for the $387,464.47 awarded by this Court today. Defendants do not dispute that the appropriate interest rate is 4.72%. *See* Kristen Remand Reply Decl. ¶ 17. It has now been 1099 days since the issuance of the Initial Fee Order. Accordingly, Plaintiffs are entitled to $55,059.90 in interest for the Additional Amount, plus $50.10 for each day until Defendants make payment.

## 2. INTEREST ON THE "UNDISPUTED AMOUNT"

As noted above, the Initial Fee Order awarded Plaintiffs attorneys' fees of $335,831.63 and costs of $19,968.06. Initial Fee Order at 22. The City paid 20% of the underlying amount due pursuant to the Initial Fee Order (or $71,159.94) on August 10, 2006. *See, e.g.,* Kristen Remand Decl. ¶ 22. The District paid the remaining 80% of the underlying amount due (or $284,639.75) on January 25, 2007. *See, e.g., id.* at ¶ 33. Plaintiffs assert that they are entitled to recover interest on the Undisputed Amounts accruing from February 28, 2006 to the date of payment by each of the Defendants. The amount of interest requested is $13,674.25. *Id.* at ¶ 39.

▮▮ Given that Defendants did not appeal Plaintiffs' entitlement to fees, there is no reason why payment of the Undisputed Amount should have been delayed. *See Fadhl v. City & County of San Francisco,*

804 F.2d 1097, 1099 (9th Cir.1986). As noted above, an award of fees begins accruing interest on the date of the initial order establishing an entitlement to them. *Friend,* 72 F.3d at 1391–92. Thus, post-judgment interest began accruing on February 28, 2006.

Defendants again contest the availability of post-judgment interest, however. The City argues that it should not be required to pay interest on the Undisputed Amount because it expressed to Plaintiffs a "willingness to immediately pay its portion of the award" shortly after the Initial Fee Order and, at any rate, that it paid Plaintiffs in a "reasonable" amount of time. The District argues that any delay in its payment to Plaintiffs for the Undisputed Amount was caused by the fact that the funds had to be issued by the Los Angeles County Office of Education. Neither Defendant cites to any authority in support of their positions and their arguments are not convincing.

First, the City's claim that it offered to pay immediately is disingenuous given that its offer was contingent on Plaintiffs not appealing the Initial Fee Order. *See* Kristen Remand Reply Decl. Ex. A ("We hope that you will agree that accepting the Defendants' offer to pay the full award now, *rather than appealing the District Court's order,* is in the best interest of the current and future students at Alhambra High School." (emphasis added)). In any event, were the City truly ready to make payment at that time and Plaintiffs were unreceptive, the City should have deposited the money with the court pursuant to Fed. R.Civ.P. 67(a) to halt the accrual of interest. *See Perkins v. Standard Oil Co. of Cal.,* 487 F.2d 672, 675 n. 7 (9th Cir.1973); *Cordero v. De Jesus–Mendez,* 922 F.2d 11, 18–19 (1st Cir.1990).

Second, the Court need not consider whether the delays in this case were reasonable and/or caused by third-parties be-

cause Defendants should bear the cost of delay regardless. The award of post-judgment interest in civil rights cases is allowed to ensure that the policy underlying the award of attorneys' fees (i.e., encouraging counsel to bring private civil rights actions) is not undermined by delay in payment. *See Spain*, 690 F.2d at 748. With that policy in mind, the cost incurred by delay in payment should be borne by the defendants whose initial wrongful conduct invoked the judicial process. *See, e.g., Perkins*, 487 F.2d at 676.[13]

Accordingly, Plaintiffs are entitled to post-judgment interest of $13,674.25 on the Undisputed Amount awarded in the Initial Fees Order.

### C. PLAINTIFFS' REMAND FEE MOTION

In addition to fees from the Initial Fee Motion, Plaintiffs also seek to recover fees and costs for work done after the Initial Fee Motion but not covered in their separate fee request to the Ninth Circuit ("Remand Fee Motion"). This request focuses primarily on fees associated with motion work on remand and efforts to collect the Undisputed Amount from Defendants pending appeal. Plaintiffs' Remand Fee Motion seeks $14,112.50 in fees and $569.40 in costs. *See* Kristen Remand Reply Decl. ¶ 16.

■ There is no dispute that a prevailing plaintiff may recover fees for work done in litigating attorneys' fees. *See, e.g., Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir.1995). So the only dispute on the Remand Fee Motion is the proper amount to award. Plaintiffs claim the following lodestar amount:

| Attorney | Experience | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Patricia Shiu | 26 years | $530 | 1.55 | $821.50 |
| Elizabeth Kristen | 7 years | $340 | 35.5 | $12,070 |
| Sharon Terman | 4 years | $275 | 4.44 | $1,221 |
| | | | Total: | $14,112.50. |

■ *See* Remand Fee Reply at 8. For the reasons set forth below, the Court finds that Plaintiffs are entitled to the amount requested.

### 1. REASONABLENESS OF HOURS CLAIMED BY PLAINTIFFS.

As they did with the hours claimed for in the Initial Fee Motion, Defendants contend that the hours billed are excessive and unreasonable. While the Court found some deduction necessary for the hours in the Initial Fee Motion, the hours claimed in the Remand Fee Motion are reasonable.

Defendants assert that roughly seven hours for which Plaintiffs request fees in the Remand Fee Motion were "cut" from the Ninth Circuit fee request and, as a result, that Plaintiffs should not be able to recover for that time here. *See* District's Remand Opp'n at 5. The papers presented to the Ninth Circuit indicate that some of the "cuts" were made because the time claimed was "time spent on case-related issues not relating to the appeal." *See* Kristen Ninth Circuit Fee Decl. ¶ 16 (attached to Mullane Remand Decl. Ex. 2); *see also* Kristen Ninth Circuit Fee Reply Decl. ¶ 12(e) (attached to Kristen Remand Reply Decl. Ex. D). While it is not clear that Plaintiffs were intending to seek those fees on remand, it does not appear that Plaintiffs were representing that the cut hours would not be claimed on remand.[14]

---

**13.** The Court rejects the contention that Plaintiffs cannot recover post-judgment interest on the Undisputed Amount because the Initial Fee Order did not specifically provide for it. *See, e.g., Tinsley v. Sea–Land Corp.*, 979 F.2d 1382, 1384 (9th Cir.1992).

**14.** The Court is not unsympathetic to Defendants' frustration, however. Plaintiffs often submitted voluminous papers that did not highlight important information. Thus, it can be difficult to ascertain precisely what is being claimed. That certainly appears to be the

Thus, the disputed time that had been excised from the Ninth Circuit fee claim is recoverable here.

Plaintiffs request 7.3 hours for Kristen's travel time from San Francisco to Los Angeles in conjunction with the August 4, 2008 status conference. Defendants claim that those hours are unreasonable because Plaintiffs' local counsel, Barker, attended the status conference. Given Kristen's familiarity with the case and the issues on appeal, *see* Kristen Remand Reply Decl. ¶ 8, it was proper for her to attend the status conference. And the hours that she billed are especially reasonable given that Barker did not bill her time attending the status conference. *Id.* Thus, the hours claimed are reasonable.

Plaintiffs requested 9.4 hours for Kristen's preparation of the Remand Fees Motion. Defendants contend that such fees are excessive because the motion is "at least partially duplicative" of work previously done by Plaintiffs' counsel. City's Remand Opp'n at 8. This argument is also unavailing. Even if prior briefs were written with significantly overlapping issues, preparing the Remand Fees Motion in less than 10 hours is inherently reasonable. As to Plaintiffs' assertion that research had been conducted on post-judgment interest by a colleague of Kristen's in 2006, the Court finds it entirely proper (and expected) that Kristen would not have re-

lied solely on outdated research. *See Moreno,* 534 F.3d at 1112.

Defendants lastly contend that the time spent conferencing is not recoverable, objecting specifically to 1.5 hours of billed time. City's Remand Suppl. Opp'n at 8. But, as the City notes, the time sought for conferencing in the Remand Fees Motion is "minute" compared to the overall fees sought. City's Remand Suppl. Opp'n at 8. The Court does not find the conferencing here to be unnecessary or unreasonable.

## 2. REASONABLENESS OF RATES CLAIMED BY PLAINTIFFS

Plaintiffs assert that the remand fee lodestar should be calculated using the following rates: (1) $530 for Shiu; (2) $340 for Kristen; and (3) $275 for Terman. In support of these rates, Plaintiffs submitted another declaration from Richard Odgers. *See* Kristen Remand Decl. Ex. V.[15] The rates requested on remand are slightly higher than the rates that the Court found reasonable above for these attorneys. The Court finds that these rates are reasonable in light of the additional years of experience that each has acquired in the interim and the Odgers Declaration.

## 3. LODESTAR AMOUNT FOR POST-REMAND FEE REQUEST

Accordingly, Plaintiffs are awarded their requested lodestar amount for their Remand Fee Motion of $14,112.50.[16]

case with the time "cut" in the Ninth Circuit fee request. Plaintiffs are well off the mark in proclaiming that the papers before the Ninth Circuit "plainly show" that Plaintiffs would seek to recover some of the excised time on remand. *See* Remand Reply at 9.

15. Defendants object to these rates, largely reiterating the arguments addressed above. For the reasons discussed above, Defendants' arguments are not persuasive. Defendants also assert on remand that rates should be set according to the matrix in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354 (D.D.C.1983). *See* Mullane Remand Decl. Ex. 4 (attaching

Declaration of Gerald Knapton). The Court will not apply the *Laffey* matrix because *inter alia* it is inconsistent with the standards applicable here requiring that the Court consider the skill and expertise of these particular attorneys in setting their rate. *See, e.g., Perez v. Cozen & O'Connor Group Long Term Disability Coverage,* No. 05cv0440 DMS AJB, 2007 WL 2142292, at *2 (S.D.Cal. March 27, 2007).

16. The City also requests that the Court hold it responsible for "no more than twenty percent of [the awarded] fees, given its limited involvement in the alleged violations, the overall litigation and the limited relief ob-

### 4. COSTS FOR POST-REMAND WORK

Lastly, Plaintiffs seek to recover costs of $569.40 in their Remand Fee Motion. *See* Remand Reply at 18. Not surprisingly, Defendants dispute the reasonableness of those costs. The Court finds that Plaintiffs are entitled to the full amount of costs requested.

■ Defendants first argue that Plaintiffs incorrectly seek double recovery for Federal Express delivery of the copies of the prior briefing to this Court. District's Remand Opp'n at 10. But Kristen noted that two separate shipments were required because the briefing was voluminous. Kristen Remand Reply Decl. at ¶ 14. This is a plausible explanation and the Court

finds the delivery fees recoverable. *See, e.g., United Steelworkers,* 896 F.2d at 407 (allowing recovery for reasonable out-of-pocket expenses).

Defendants next argue that Kristen's travel costs are not recoverable because they would ordinarily not be billed to a paying $customer. District's Remand Opp'n at 10. The Court disagrees. *See Marbled Murrelet v. Pacific Lumber Co.,* 163 F.R.D. 308, 327 (N.D.Cal.1995).

Accordingly, Plaintiffs are entitled to recover the full amount of costs sought in their Remand Fees Motion.

### III. CONCLUSION

For the reasons set forth above, the Court hereby AWARDS Plaintiffs the following:

| | |
|---|---|
| Fees for Initial Fee Motion: | $723,296.10 [17] |
| Interest on Additional Amount: | $ 55,059.90, plus $50.10 per day until paid |
| Interest on Undisputed Amount: | $ 13,674.25 |
| Fees Awarded for Remand Fee Motion: | $ 14,112.50 |
| Costs Awarded for Remand Fee Motion: | $ 569.40 |

IT IS SO ORDERED.

tained by Plaintiffs as to Defendant City specifically." City's Remand Suppl. Opp'n at 13. The Court declines to make such a determination. First, the request appears to be moot as the Defendants seemingly have already worked out an agreement on apportioning fees in this case. *See, e.g.,* Kristen Remand Decl. ¶ 22, 33 (the City paid 20% of undisputed fee amount and the District paid the remaining 80%). Second, the issue was not

sufficiently briefed for this Court to make any such determination. The City provides a few examples of instances in which fees purportedly relate to the District rather than the City. *See, e.g.,* City's Remand Suppl. Opp'n at 2–3. The District for its part is silent on the issue.

**17.** As noted above, a portion of this fee amount has already been paid by Defendants.